**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 10 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

DAVID SHERWOOD,

     Plaintiff - Appellant,

v.

OKLAHOMA COUNTY, a political
subdivision of the State of Oklahoma, by
and through its Commissioners;
JOHN WHETSEL, Sheriff of Oklahoma
County; JOHNNY DIRCK, Colonel,
Oklahoma County Sheriff's Office;
CARSON MARSHALL, Major,
Oklahoma County Sheriff's Office;
and CHESTER LONGACRE,
Captain, Oklahoma County Sheriff's
Office, Individually and in their
official capacity,

     Defendants - Appellees.

No. 01-6194
(D. C. No. 00-CV-466-C)
(W. D. Oklahoma)

**ORDER AND JUDGMENT**[*]

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **EBEL, McKAY**, Circuit Judges, and **SAM**, Sr. District Judge.[**]

This 42 U.S.C. § 1983 action challenges the decision of Defendant Oklahoma County Sheriff John Whetsel and Defendants Oklahoma County, Johnny Dirck, Carson Marshall, and Chester Longacre (collectively the "Defendants") to require Plaintiff David Sherwood to supervise inmates in the painting of various vehicles owned by Defendant Oklahoma County. Plaintiff alleges he was forced to supervise the painting even after Defendants were notified of the potential serious health hazards associated with the process and type of paint being used. Plaintiff asserts further that Defendants failed to provide proper equipment to ensure the painting could be done safely, and that on prior occasions the Oklahoma County Department of Health had stopped Defendants from painting due to lack of proper safety equipment. As a result of the painting, Plaintiff alleges he suffered serious harm.

Plaintiff claims that Defendants are liable under § 1983 for abusing their power and thereby violating his substantive due process rights by recklessly and/or intentionally exposing him to an unreasonable risk of harm. Plaintiff claims Defendants' actions are sufficient to meet the shock the contemporary conscience standard applied to substantive

---

[**]The Honorable David Sam, Senior Judge, United States District Court for the District of Utah, sitting by designation.

due process claims. The district court rejected Plaintiff's claims and granted Defendants summary judgment, holding that Plaintiff failed to demonstrate a constitutional violation.

## I. BACKGROUND

Plaintiff was initially hired by the Oklahoma County Sheriff's Office in January 1992. Sometime in 1995 Plaintiff was transferred from detention functions to the maintenance center where his responsibilities included painting, among other things.

Defendant John Whetsel took office as Sheriff of Oklahoma County in January 1997. Early in his administration he made a decision to have the fleet of Sheriff's vehicles repainted. After discussing the repainting operation with a county commissioner, it was determined that the repainting of the fleet would be accomplished at the County's District 3 maintenance facility. Whetsel assigned the task of working out the plan to Defendant Undersheriff/Colonel Johnny Dirck.

Early in 1997, the planned District 3 painting operation was shut down for health and safety reasons by the Oklahoma County Health and Safety Department because the County did not have a proper spray paint booth conducive to painting vehicles. Undersheriff Dirck discussed the shut down, and the reasons for it, with Sheriff Whetsel. The Sheriff and Undersheriff were also put on notice at this point that the procedure was governed by OSHA regulations.

Nevertheless, shortly after the initial shut-down, and after determining that a commercial repainting would cost approximately $300.00 per vehicle, the Sheriff

continued his efforts to have the vehicles painted in-house. He ordered paint and materials for the construction of a make-shift paint booth at the Sheriff's Training Center located in a remote, semi-rural part of Oklahoma County. Neither the Sheriff nor anyone else involved in the construction of the paint booth discussed the issue of proper ventilation, even though ventilation had been an issue involved in the shut-down of the District 3 painting operation.

The Training Center paint booth was observed by an enforcement officer of the County Health and Safety office in April 1997. Plaintiff and another county employee were told by the enforcement officer that the make-shift paint booth was not OSHA-approved[1]. In addition, that same month, Sheriff Wetsel was personally advised in writing by the director of the Oklahoma County Health and Safety Department that the planned painting operation at the Sheriff's Training Center was dangerous to the health and safety of workers and did not comply with applicable workplace safety regulations or environmental regulations. The Sheriff's office responded to the notice and indicated that they would not attempt to do any more spray painting of vehicles.

---

[1]"[W]hile federal OSHA regulations do not directly apply to state agencies, they are still binding on state agencies because they have been adopted, in whole, by the Oklahoma Public Employees Occupational Safety and Health Administration (PEOSH) and are mandatory workplace rules." Appellant's Application to Submit Supplemental Appendix. Defendants did not oppose Appellant's motion or this submission which includes the quoted statement of law. Accordingly, the Court grants the application/motion to file an additional appendix and has considered the supplemental information in making its decision.

Despite the Sheriff's response to the health department's warning the previous year, in March 1998 Defendants ordered Plaintiff Sherwood to supervise inmates in painting the vehicles in question at the Training Center. His protests were dismissed and Plaintiff alleges he was threatened with discharge if he did not complete the painting project. No steps were taken by those in authority to ensure that the operation would comply with OSHA regulations. The painting operation at the Training Center did not have any ventilation and the workers were not given any safety equipment despite the Sheriff's Office having been put on notice that proper ventilation was an important issue and despite Plaintiff's requests for safety equipment. The paint used was highly toxic, and Plaintiff and the inmates involved in the painting operation have suffered serious health consequences as a result. Specifically, Plaintiff contracted occupational asthma, difficulty in memory and concentration, and painful, uncontrollable twitching spasms, and is disabled from working.

Plaintiff brought this action predicated upon his substantive due process rights as well as other pendant state law tort claims. The district court granted Defendants' motion for summary judgment on Plaintiff's § 1983 claims ruling that Plaintiff had failed to identify conduct which was shocking to the contemporary conscience and therefore had failed to establish the existence of a Constitutional right, much less any violation of such a right by Defendants. The district court thereafter dismissed, without discussion,

Plaintiff's pendant state claims. The district court did not discuss or rule on the issue of qualified immunity. Plaintiff now appeals the district court's ruling on his § 1983 claims.

## II. DISCUSSION

We review "the grant of summary judgment *de novo*, applying the same standards used by the district court." Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998). Since there are no material facts in dispute[2], the Court proceeds to determine whether the district court correctly applied the substantive law. See Uhlrig v. Harder, 64 F.3d 567, 571 (10th Cir. 1995) (quoting Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

Both the parties and the district court utilized the now-familiar shock the conscience standard to analyze Plaintiff's claims to determine if he had sufficiently alleged facts which, if proven, state a substantive due process claim. Collins v. City of Harker Heights Tex., 503 U.S. 115 (1992), offers guidance in considering the scope of substantive due process violations. In Collins, the representative of a decedent sued the City under § 1983 for providing an unsafe workplace when it caused a worker to enter a sewer without adequate ventilation and the worker died as a result. The Court held that the City did not violate the worker's substantive due process rights, explaining that "[t]he Due Process Clause 'is not a guarantee against incorrect or ill-advised [government]

---

[2]Aplt. App. at 246.

- 6 -

decisions.' Nor does it guarantee municipal employees a workplace that is free of unreasonable risks of harm." Id. at 129 (quoting Bishop v. Wood, 426 U.S. 341, 350 (1976)). Rather, "the Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" Id. at126 (quoting DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 196 (1989) (quotations omitted)). Hence, Collins held that only government conduct that is arbitrary or conscience shocking in a constitutional sense can form the basis for a substantive due process claim. See Collins, 503 U.S. at 116.

Using that standard, the district court concluded that "while the conduct alleged by Plaintiff is troublesome, it cannot be said it shocks the conscience." Aplt. App at 261. The district court cited and relied on Tenth Circuit authority to the effect that,

> to satisfy the 'shock the conscience' standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.

Id. (quoting Uhlrig, 64 F.3d at 574). The Court in Uhlrig went on to state that "[t]he level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct." Uhlrig, 64 F.3d at 574.

County of Sacramento v. Lewis, 523 U.S. 833 (1998), is one such step in that evolution and is directly relevant to Plaintiff's claims. The issue in Sacramento was

- 7 -

whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender.  The Court held in such a situation that "only a purpose to cause harm unrelated to the legitimate object of arrest" would amount to arbitrary conduct shocking to the conscience, thereby creating substantive due process liability.  Sacramento, 523 U.S. at 836.

As a foundation for its analysis of the facts in Sacramento, the Court outlined the development of constitutional law in this area.  It is well-established that negligent conduct is "categorically beneath the constitutional due process threshold."  See Daniels v. Williams, 474 U.S. 327, 328 (1986)  ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." (emphasis in original)).  At the other end of the culpability spectrum discussed in Sacramento is conduct deliberately intended to injure in some way unjustifiable by any government interest.  See Sacramento,  523 U.S. at 331 (quoting Daniels, 474 U.S. at 331 ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." (emphasis in original)). Unfortunately, Plaintiff Sherwood's claims do not fall at either end of this culpability spectrum.  Rather, his claims of reckless/deliberate indifference fall within the middle range.  Nevertheless, the Court has "recognized the possibility that some official acts in [the middle] range may be actionable under the

Fourteenth Amendment, . . . ." Sacramento, 523 U.S. at 849. This is particularly so when defendants have an opportunity to deliberate.

> [L]iability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. *When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking.* But when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicated "the large concerns of the governors and the governed."

Id. at 853 (emphasis added, citation omitted).

In such middle-range cases, the totality of the facts in a given case, combined with circumstance and context, become critical factors to use in evaluating behavior of government actors that amounts to more than negligence but less than intent to harm. For it follows that "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." Id. at 850.

In comparing Defendants' actions to the specific government conduct in the cases cited in Sacramento, the following facts are compelling. Defendants ordered Plaintiff to paint the vehicles using hazardous paint in a make-shift paint booth with no ventilation or other safety equipment. Plaintiff was at risk of losing his job if he refused, despite clear information that the painting operation was in violation of law and in violation of state

and federal safety regulations that had been brought to Defendants' attention by the director of the Oklahoma County Health and Safety Department. His employment and his right to work and earn a living were threatened by those in authority over him if he failed to comply with the order from Defendants to paint the vehicles; yet, the uncontroverted facts indicate Defendants' deliberate indifference to Plaintiff's health and safety put Plaintiff at serious risk if he did comply with the order. Plaintiff was in a classic lose/lose situation.

These facts compel a different result than those in Collins where the plaintiff's allegations that failure to train and warn employees about existing, known workplace hazards created a constitutional deprivation were unsuccessful. Collins, 503 U.S. at 115. Plaintiff's facts are also distinguishable from those in Sacramento where the state actors did nothing to create the dangerous situation, they merely reacted to it under circumstances requiring an immediate response. See Sacramento, 523 U.S. at 855. In the case before this court, the hazardous conditions were created by the state actors who then ordered Plaintiff to expose himself to almost certain injury or lose his job.

Time and opportunity to deliberate are additional factors affecting the standard of fault. See, e.g., Barrie v. Grand County, Utah, 119 F.3d 862, 867 (10th Cir. 1997); Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996) (deliberately indifferent conduct is enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial). "[J]ust as the description of the custodial prison

situation shows how deliberate indifference can rise to a constitutionally shocking level, so too does it suggest why indifference may well not be enough for liability in the different circumstances of " cases involving high speed chases or violent disturbances like prison riots. See Sacramento, 523 U.S. at 852 (no substantive due process violation where a police officer fulfilling legitimate government objective engages in a high speed chase with no time or opportunity for deliberate, reflective thought, despite fatal end results); see also Whitley v. Albers, 475 U.S. 312, 320 (1986) (in cases involving violent prison disturbances, a deliberate indifference standard does not adequately capture the importance of the competing obligations faced by prison officials, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance). Hence, the standard of fault is necessarily influenced by the state actor's immediate circumstances. Where there is time for thoughtful deliberation, defendants are held to a higher standard. Conversely, where circumstances necessitate split second judgments, the Court has held a much higher standard of fault than deliberate indifference has to be shown for liability.

In the present case, Defendants had over a year to contemplate their actions and the consequences of their conduct. Defendants conceived of the painting plan early in 1997 and it was eventually accomplished, despite two ordered shut-downs, in March 1998. The undisputed evidence suggests the repeated warnings and safety communications from all sides did little or nothing to deter Defendants from their plan to paint the vehicles. To

the contrary, Defendants simply moved the operation to a remote part of Oklahoma County and proceeded to order Plaintiff and the inmates to do the job without any safety equipment or proper ventilation and without any apparent regard for Plaintiff's safety.

Applying the reasoning outlined in Sacramento, Plaintiff has pled facts which are sufficient to allow the question of Defendants' conduct to go before a jury. The law recognizes a constitutional violation based on deliberate indifference where defendants create a dangerous situation, enjoy the luxury of making an unhurried judgment, have the chance for repeated reflection largely uncomplicated by competing obligations, and nevertheless take action which at "best sanction[s], at worst intend[s]" Plaintiff's injury. See Eddy v. Virgin Islands Water and Power Authority, 955 F.Supp. 468, 475, reconsidered, 961 F. Supp. 113 (D.V.I 1997) ("Although Mr. Eddy does not state that the defendants specifically intended to injure him, he does allege that they were virtually certain that he would suffer injury. Plaintiff further alleges that, notwithstanding this knowledge, [defendant] ordered him to perform the work after providing him equipment which violated numerous OSHA regulations."). See also Sacramento, 523 U.S. at 855 (Finding of no substantive due process cause of action affected by fact that police had done nothing to cause the high-speed driving of the suspect, nothing to cause the suspect to flout the commonly understood law enforcement authority to control traffic, and nothing to encourage the suspect to race through traffic at breakneck speed forcing other drivers out of their travel lanes. Rather, the suspect's outrageous behavior was

instantaneous and so was the officer's instinctive response.).   Concern about Plaintiff's and the inmates' welfare was not only possible, but one would think obligatory, given Defendants' position of authority over Plaintiff and the undisputed information given to Defendants about the serious safety and health hazards posed by the planned painting. Hence, the facts and circumstances presented to the Court evidence the possibility that a reasonable jury could find Defendants' behavior was egregious, outrageous and recklessly indifferent to the serious consequences imposed on Plaintiff.

Finally, the exercise of governmental power by the Defendants in the instant case is without any reasonable justification in the service of a legitimate governmental objective.  Neither was Defendants' judgment impeded by the pulls of competing obligations.  In the case of a high-speed police chase, the legitimate governmental objective is apprehension of suspected criminals and the need to "show that flight from the law is no way to freedom."  See Sacramento, 523 U.S. at 853.  Defendants' "competing interests" in the instant case pale by comparison.  With time to make an unhurried judgment and with accurate information outlining the applicable regulations and attendant risks and dangers involved with the proposed painting operation, Defendants placed their desire to paint old vehicles (which were not even worth spending $300.00 a piece on) over the health, safety, and welfare of Plaintiff.  Such arbitrary action pursued without any reasonable justification makes the Defendants' deliberate indifference to the rights, health and welfare of the Plaintiff actionable.

- 13 -

The parties raised additional issues in connection with the motion for summary judgment before the district court which were not addressed by the district court opinion. Whether the individual Defendants are entitled to qualified immunity, and whether the municipality is liable either because of its own conduct or because of the actions of Defendants, or any of them, in their official capacity are questions the district court found unnecessary to decide given its disposition of the constitutional question. This Court declines to rule on those issues where the district court has not made findings in the first instance.

Accordingly, we reverse the judgment of the district court and remand the case for further consideration.

### III. CONCLUSION

For the reasons set forth above, the district court's order granting Defendants' motion for summary judgment is **REVERSED** and the matter is **REMANDED** to the district court.

Entered for the Court

David Sam
Senior District Judge