**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 7, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BARBARA GREEN, individually and
on behalf of all heirs as the surviving
spouse of WILLIS C. GREEN,
decedent; STEPHEN GREEN,
individually; RANDY GREEN,
individually,

        Plaintiffs - Appellees,

    v.

JONATHAN S. POST; PUEBLO
COUNTY SHERIFF'S
DEPARTMENT,

        Defendants - Appellants,

THE COUNTY OF PUEBLO,

        Defendant.

No. 08-1122

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 07-cv-01522-WYD-MEH)**

---

Sara Ludke Cook (Gordon L. Vaughan with her on the briefs), Vaughan &
DeMuro, Colorado Springs, Colorado, for Defendants - Appellants.

Gregory A. Gold, Kiel, Trueax & Gold, LLC, Denver, Colorado, for Plaintiffs -
Appellees.

---

Before **O'BRIEN**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

**ANDERSON**, Circuit Judge.

This case arises out of a collision on June 16, 2006, in which Willis C. Green was killed when his vehicle was struck by a police vehicle driven by Defendant Pueblo County Sheriff's Department Deputy Jonathon Post. Plaintiffs, Barbara Green, the surviving spouse of Willis Green, and her two children, Stephen and Randy Green (collectively "the Greens"), sued Deputy Post and others,[1] alleging nine claims for relief, including six state law claims and three claims pursuant to 42 U.S.C. § 1983.

The defendants moved to dismiss the two state law claims against the Sheriff's Department, as well as the three § 1983 claims on the basis of qualified immunity. After a full briefing cycle, during which the federal district court converted the motion to dismiss to a motion for summary judgment, the court entered an order on March 14, 2008, granting the motion for summary judgment on the state law claims and denying the motion as to the three § 1983 claims.[2] In particular, the court held that "Defendant Post is not entitled to dismissal on

---

[1]The original defendants in this case were Deputy Post, the Pueblo County Sheriff's Department ("PCSD") and the County of Pueblo.

[2]The Greens voluntarily withdrew their state law claims for negligence against the Sheriff's Department. The district court also dismissed the County of Pueblo as a party because the Greens failed to properly name it as a party defendant.

-2-

qualified immunity grounds because the Plaintiffs have alleged sufficient facts from which a jury could find that decedent's due process rights were violated, a right which was clearly established at the time of the collision on June 16, 2006." Order at 9, Appellant's App. at 152. This interlocutory appeal followed. We reverse and remand for entry of summary judgment in favor of the defendants.

## BACKGROUND

As indicated, Willis Green was killed when a police vehicle driven by Deputy Post struck Green's 1995 Kia, as Green was attempting to turn left at the intersection of U.S. 50 and Morris Avenue in Pueblo, Colorado. Deputy Post was traveling straight through the intersection at a high rate of speed and without his vehicle's siren or lights on, as he was attempting to catch up to a vehicle suspected of driving away from a gas station without paying for approximately $30.00 worth of gas.[3] The light had turned from green to yellow as Post entered the intersection, and Post's car hit Green's car as it turned left in front of Post, also with the yellow light.[4] Green was ejected from his car and died from the

---

[3]An accident reconstruction report prepared by the Pueblo Police Department concluded that Post was traveling forty-three miles per hour at the time his police vehicle collided with Green's car. The report concluded that, shortly before the collision, Post's vehicle was traveling approximately sixty-four miles per hour. The posted speed limit at the location of the accident was forty-five miles per hour. Appellee's Supp. App. at 25, 33, 35.

[4]The district court stated that Post "had a red light." Order at 3, Appellant's
(continued...)

injuries he received. Deputy Post testified in his deposition that he was not responding to an emergency situation and he was not actually in pursuit of the suspect vehicle. Rather, he was simply trying to catch up to the suspected violator of the law, to verify that it was the vehicle involved in the theft of the gas. As indicated, Deputy Post did not have his emergency lights on at the time of the collision, nor was his siren activated.

The Greens initially filed their complaint in state court, alleging nine causes of action: (1) a state law wrongful death claim against Post; (2) a state law negligence per se claim against Post; (3) a respondeat superior claim against the PCSD; (4) a state law negligence claim against the PCSD; (5) a negligent hiring and supervision claim against the PCSD; (6) a state law claim for willful and wanton conduct against Post; (7) a 42 U.S.C. § 1983 claim against Post for a violation of Green's substantive due process rights; (8) a 42 U.S.C. § 1983 claim against Pueblo County; and (9) a 42 U.S.C. § 1983 claim against the PCSD and Pueblo County for failure to train.

---

[4](...continued)
App. at 146. The videotape of the collision, obtained from the camera on Deputy Post's vehicle, shows that the light was yellow when Post collided with Green. The videotape, which we have viewed, is a part of the record. See Scott v. Harris, 550 U.S. 372, 378-79 (2007) (In noting its own review of the videotape of the incident involved, the Court observed that "[t]he videotape quite clearly contradicts the version of the story told by respondent and adopted by the Court of Appeals.").

After the case was removed to federal court on the ground that the federal claims conferred jurisdiction on the federal district court, see 28 U.S.C. § 1441(a) and (b), Post and the PCSD filed a motion to dismiss the fourth, fifth, seventh, eighth and ninth claims. A full briefing cycle ensued, during which the district court converted the motion to dismiss to a motion for summary judgment by considering evidence outside of the pleadings, and entered an order granting the motion for summary judgment on the fourth and fifth claims and denying the motion as to the seventh, eighth and ninth claims. The district court concluded that Post was not entitled to qualified immunity:

> In order to prevail on a § 1983 claim that alleges a substantive due process violation of the Fourteenth Amendment, "the plaintiff must demonstrate that the defendant acted in a manner that shocks the conscience." The parties dispute the level of culpability that must be shown in order to satisfy the shocks-the-conscience standard. Plaintiffs have alleged that Deputy Post's conduct was deliberately indifferent and willful and wanton to the degree that it shocks the conscience.

> Defendants urge that Sacramento v. Lewis, 523 U.S. 833 (1998), and its progeny require this Court to find that Plaintiffs must allege sufficient facts to show that Defendant Post acted with the intent to harm the deceased. . . .

> . . . Plaintiffs argue that they have sufficiently stated a due process violation by alleging that Deputy Post's actions were deliberately indifferent to the decedent and willful and wanton, so as to shock the conscience.

> I agree that the Defendant's reliance on the "intent to harm" standard is misplaced. The Tenth Circuit has recognized that the level of culpability that must be shown under the shocks-the-conscience standard is difficult to define and requires an assessment

-5-

of the "totality of the circumstances" of each particular case. The Tenth Circuit found that deliberate indifference could be enough to shock the conscience when a police officer, responding to a non-emergency call for back-up, accelerated through a red-light at excessive rates of speed while operating his emergency lights but without operating his siren or air horn.

. . . .

. . . Plaintiffs have alleged and brought forth specific evidence to create a genuine dispute as to whether Deputy Post was engaged in a high speed pursuit or responding to an emergency situation. It appears from his deposition that Deputy Post did not think that he was in pursuit of a vehicle or responding to an emergency situation. I therefore find that the Plaintiffs have brought forth sufficient evidence from which a jury could find that Deputy Post's conduct was deliberately indifferent to an extent which shocks the conscience.

I also find that the Decedent's right was clearly established at the time of Defendant Post's conduct.

Order at 6-8, Appellant's App. at 149-51.[5]  The court accordingly denied Post's

[5]In denying summary judgment for Deputy Post, the district court relied heavily on our decision in Williams v. City and County of Denver, 99 F.3d 1009 (10th Cir. 1996), vacated, 140 F.3d 855 (10th Cir. 1997).  In Williams, we found that the officer's "alleged conduct, particularly his decision to speed against a red light through an intersection on a major boulevard in Denver without slowing down or activating his siren in non-emergency circumstances, all in violation of state law and police regulations, could be viewed as reckless and conscience-shocking."  Id. at 1017.  Because we held that the law was not clearly established at the time of the accident, however, we held that the officer was entitled to qualified immunity.  We ultimately vacated that panel decision and remanded the case to the district court for further proceedings in light of the Supreme Court's recently-decided opinion in Lewis.  The district court on remand in Williams found that summary judgment for the defendants was improper because a jury could find that the officer's deliberate indifference was conscience-shocking and therefor a substantive due process violation.

Although our decision was vacated, the district court in this case placed great emphasis upon its reasoning:

> The Tenth Circuit's decision in Williams found that it could be conscience-shocking where a decedent died after his vehicle was struck by a vehicle driven by a police officer who sped through an intersection against a red light while operating his emergency lights but without using his siren while responding to a non-emergency call for back up.  Though that decision was vacated and remanded to the District of Colorado in light of the Lewis decision, the district court essentially affirmed the Tenth Circuit's holding on remand.  Like the Tenth Circuit, Judge Nottingham specifically found that a jury could find that the officer's conduct was conscience shocking and in violation of the decedent's due process rights.
>    Taking the facts in the light most favorable to the Plaintiffs, Deputy Post's conduct was arguably more egregious than the officer's in Williams, because Deputy Post was not operating his overhead lights.

Order at 8-9, Appellant's App. at 151-52.

request that qualified immunity shield him from this action. This appeal followed.

Post argues on appeal that: (1) the district court erred in denying his motion to dismiss/for summary judgment on the ground of qualified immunity; (2) our court has pendent appellate jurisdiction over "the denial of the federal constitutionally-based claims for relief against" the Sheriff's Department; and (3) if our court does have such pendent appellate jurisdiction, the district court erred in denying the motion to dismiss/for summary judgment as to the federal constitutionally-based claims against the Sheriff's Department.

## DISCUSSION

"'The denial of a summary judgment motion ordinarily is not an appealable final order.'" Dixon v. Kirkpatrick, 553 F.3d 1294, 1301 (10th Cir. 2009) (quoting Bass v. Richards, 308 F.3d 1081, 1086 (10th Cir. 2002)). "When a party has been denied qualified immunity, that denial can be appealed prior to a final judgment *only* to the extent that the appeal is based on an issue of law." Id. Accordingly, when we review these issues of law, we "'consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficient[ly] supported for purposes of summary judgment.'" Id. (quoting Kinney v. Weaver, 367 F.3d 337, 348 (5th Cir. 2004)). "Unlike other appeals from summary judgment decisions (which are, perforce, appeals of grants rather than denials), the appellate court in an interlocutory

appeal regarding qualified immunity 'can simply take, as given, the facts that the district court assumed when it denied summary judgment for [a] (purely legal) reason.'" Id. (quoting Johnson v. Jones, 515 U.S. 304, 319 (1995)).[6]

## I.  Qualified Immunity

As indicated, in response to the Greens' claims against him in his individual capacity, Deputy Post asserted a defense of qualified immunity.  "This defense shields government officials performing discretionary functions from liability 'if their conduct does not violate clearly established rights of which a reasonable government official would have known.'"  Graves v. Thomas, 450 F.3d 1215,1218 (10th Cir. 2006); see also Perez v. Unified Gov't of Wyandotte County/Kansas City, Kan, 432 F.3d 1163, 1165 (10th Cir. 2005).

Previously, we applied a "two-step process" to determine whether "a defendant is entitled to qualified immunity."  Graves, 450 F.3d at 1218 (noting that the two-step process entailed first, determining "whether Plaintiffs have asserted a violation of a constitutional right at all" and second, "whether that right

---

[6]As indicated above, defendants initially filed a motion to dismiss the Greens' complaint.  On a motion to dismiss, "if 'matters outside the pleading[s] are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'"  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).  Because the court in this case considered matters outside the pleadings, it treated the defendants' motion to dismiss as a motion for summary judgment.

was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right") (further quotations omitted). See Saucier v. Katz, 533 U.S. 194, 201 (2001) (holding that the "threshold question" of whether "the officer's conduct violated a constitutional right . . . must be the initial inquiry").

The Supreme Court has now altered that analysis, holding that courts no longer must decide qualified immunity based upon the sequence required by Saucier and followed by our court in cases like Graves. See Pearson v. Callahan, 129 S. Ct. 808, 812 (2009) (holding "that the Saucier procedure should not be regarded as an inflexible requirement and that [defendants may be] entitled to qualified immunity on the ground that it was not clearly established at the time of the search that their conduct was unconstitutional."). As the Supreme Court noted, "there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." Id. at 820. Thus, courts now "have the discretion to decide whether [the Saucier two-step sequence] is worthwhile in particular cases." Id. at 821. As the First Circuit recently observed, "Pearson creates a pathway to flexibility." Bergeron v. Cabral, 560 F.3d 1, 8 (1st Cir. 2009).

In this case, Deputy Post challenges the district court's conclusion that "the Plaintiffs have brought forth sufficient evidence from which a jury could find that

Deputy Post's conduct was deliberately indifferent to an extent that shocks the conscience." Order at 8, Appellant's App. at 151. Accordingly, we consider whether it was clearly established at the time of the incident (June 2006) that a police officer traveling through an intersection in response to a call to investigate a minor crime, with neither lights nor siren on, who strikes a car turning left on a yellow light, killing its driver, has violated that driver's substantive due process rights.

In analyzing the qualified immunity claim in this case, we note that the Greens, as plaintiffs, carry "the burden of showing both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation." Williams v. Berney, 519 F.3d 1216, 1220 (10th Cir. 2008). With respect to whether a particular right was clearly established, "[o]rdinarily, . . . 'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 516 (10th Cir. 1998) (quoting Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992)). Moreover, "[a] plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." Id. at 517. "A plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." Id.; see also Fogarty v. Gallegos, 523 F.3d 1147, 1155

-11-

(10th Cir. 2008) (holding that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances") (further quotation omitted). "Although Plaintiff does not need to find a case with an identical factual situation, he still must show legal authority which makes it 'apparent' that 'in the light of pre-existing law' a reasonable official . . . would have known that [the conduct in question violated substantive due process.]" Moore v. Guthrie, 438 F.3d 1036, 1042 (10th Cir. 2006); see also Bergeron, 560 F.3d at 11 ("In order to show that a principle is clearly established in the pertinent sense, a plaintiff ordinarily must identify 'cases of controlling authority . . . at the time of the incident . . . [or] a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'") (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)).

As we observed in Graves, "[t]he Supreme Court's decision in Lewis is the starting point when considering a substantive due process claim resulting from a highspeed chase." Graves, 450 F.3d at 1221. In Lewis, a police officer pursued teenagers on a motorcycle at speeds reaching 100 miles per hour, when they refused to obey his command to stop. When the motorcycle made a sharp turn, one of the teenagers fell off and was killed when the officer was unable to stop his car in time and struck the teen.

-12-

In acknowledging the availability of a substantive due process claim where there is an executive abuse of power, the Court held that a "cognizable level of executive abuse of power [is] that which shocks the conscience." Lewis, 523 U.S. at 846; see also Graves, 450 F.3d at 1221. While noting that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process," the Court observed that it is a "closer call[]" whether "the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence." Lewis, 523 U.S. at 849; see also Radecki v. Barela, 146 F.3d 1227, 1231 (10th Cir. 1998). As applied to high-speed police pursuits, the Court held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." Lewis, 523 U.S. at 854.[7]

---

[7]The Supreme Court's reference in Lewis to "high-speed chases," as well as the many references to "chases" and "pursuits" in our discussion of cases, *infra*, raise the question of what constitutes a "chase" or a "pursuit" and, particularly, a "high-speed" chase or pursuit. On one end of the spectrum is the situation in Lewis, where the police officer embarked on a virtually instantaneous high-speed (at speeds up to 100 mph) "chase" or "pursuit" of a motorcycle which was directly in front of the officer and was attempting to evade arrest. The seventy-five second chase ended in the death of the fleeing suspect. At the other end of the spectrum is a "response" to a non-emergency call to assist in an investigation or disturbance some distance away. In each case, the officer is clearly responding to a call/command/request, and is clearly performing official duties. Yet one is

(continued...)

-13-

The Court acknowledged, however, that circumstances are important in evaluating the existence of a substantive due process claim: "Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." Id. at 850 (emphasis added); see also Graves, 450 F.3d at 1221. Thus, "when unforseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed." Lewis, 523 U.S. at 853; see also Perez, 432 F.3d at 1166. "However, 'when actual deliberation is practical,' we will employ a 'deliberate indifference' standard." Graves, 450 F.3d at 1221 (quoting Lewis, 523 U.S. at 851); see also Radecki, 146 F.3d at 1231 (discussing Lewis and stating "[w]e are directed to employ the 'deliberate indifference' standard only when actual deliberation is practical").

---

[7](...continued)
more clearly and obviously labeled a "chase" or "pursuit" and one is not.

Our case lies somewhere in the vast middle ground. Officer Post was clearly responding to a call to "pursue" a suspected gas thief, whose car may or may not have been in the officer's view. There was undoubtedly some urgency, as a delay would surely have made apprehension of the suspect more difficult, if not impossible. Yet, it was not like the "chase" or "pursuit" which occurred in Lewis and cases similar to Lewis. This simply illustrates the myriad of situations facing officers, which makes comprehension of clear legal rules using terms like "chase" and "pursuit" more difficult.

In analyzing the meaning of the Court's use of the phrase "actual deliberation," we have "cautioned that [it] meant more than having a few seconds to think." Perez, 432 F.3d at 1167. As we explained in examining when a state actor has no time to deliberate:

> The intent to harm standard is not limited to situations calling for split-second reactions. Rather, it applies whenever decisions must be made "in haste, under pressure, and frequently without the luxury of a second chance." As the Eighth Circuit recently noted, "the intent-to-harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation."

Id. (quoting Lewis, 523 U.S. at 853, and Terrell v. Larson, 396 F.3d 975, 978 (8th Cir. 2005) (en banc)).[8]

Accordingly, under our precedents interpreting Lewis, it was clearly established that the Greens could demonstrate a substantive due process violation if they established facts which, taken in the light most favorable to them, showed that Deputy Post intended to harm Willis Green, or that he had sufficient time to

_____

[8]As the quotation in text indicates, the meaning of the term "deliberation," and a determination of when an officer has time for "actual deliberation," is elusive. It is clearly not necessarily defined with reference to minutes or seconds. It is more context-specific. Thus, some circuits have adopted a bright-line rule that the Lewis intent-to-harm standard applies to all "'public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender,'" regardless of whether the chase conditions arguably afforded pursuing officers time to deliberate." Meals v. City of Memphis, 493 F.3d 720, 730 n.8 (6th Cir. 2007) (quoting Helseth v. Burch, 258 F.3d 867, 871 (8th Cir. 2001) (en banc)). In our case, Deputy Post responded to the call to investigate the alleged gas thief in fourteen seconds, and only a few minutes elapsed of high-speed travel before the collision.

-15-

actually deliberate and exhibited conscience-shocking "deliberate indifference" towards Green.

Because there is no evidence that Deputy Post intended to harm Green, we can easily conclude that no constitutional violation occurred under the intent-to-harm standard of <u>Lewis</u>. The question remains, however, whether the Greens have established a constitutional violation under the lower deliberate indifference standard. We hold as a matter of law that they have not.

### A. Deliberate Indifference Standard

As indicated, the facts of this case place it "in the middle range of the culpability spectrum, where the conduct is more than negligent but less than intentional," and where "there may be some conduct that is egregious enough to state a substantive due process claim." <u>Radecki</u>, 146 F.3d at 1231. "Within this middle range <u>Lewis</u> directs us to analyze the level of culpability by examining the circumstances that surround the conduct at issue and the governmental interest at stake." <u>Id.</u> We have characterized this middle range standard as "deliberate indifference" or "calculated indifference" which is sufficient "to shock the conscience." <u>Id.</u> at 1231-32; <u>see also</u> <u>Bublitz v. Cottey</u>, 327 F.3d 485, 490 (7th Cir. 2003) ("To rise to the level of a constitutional violation, a deliberately indifferent act must be one which is conscience-shocking—the Supreme Court has

acknowledged that not every deliberately indifferent action will rise to the 'constitutionally shocking level.'").

In attempting to divine a meaningful standard from the general concept of conscience-shocking deliberate indifference, we bear in mind that the Supreme Court has made it clear that executive action which violates the Fourteenth Amendment's substantive due process provision must meet a very high degree of culpability. Thus, "the core of the concept [of substantive due process] [is] protection against arbitrary action" or "the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." Lewis, 523 U.S. at 845 (further quotation omitted). The Court's cases "have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" Id. at 846 (quoting Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992)). Accordingly, "in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. at 847 n.8; see also Berney, 519 F.3d at 1221 (For a "constitutional tort[] . . . [t]he tortious conduct alleged 'must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power . . . . [I]t must demonstrate a degree of outrageousness and a

-17-

magnitude of potential or actual harm that is truly conscience shocking.'"

(quoting <u>Livsey v. Salt Lake County</u>, 275 F.3d 952, 957-58 (10th Cir. 2001)).

In exploring when deliberately indifferent conduct can be conscience-shocking, we have applied that standard "'when actual deliberation is practical.'" <u>Graves</u>, 450 F.3d at 1221 (quoting <u>Lewis</u>, 523 U.S. at 851)); <u>see also</u> <u>Radecki</u>, 146 F.3d at 1231. We have observed that when an officer's decision to pull his car behind a suspect and turn on his overhead lights is "a product of actual deliberation," that "trigger[s] a deliberate indifference analysis of [the officer's] mental state." <u>Graves</u>, 450 F.3d at 1222. However, "a culpable mental state, alone, is insufficient to establish a violation of substantive due process." <u>Id.</u> Thus, in <u>Graves</u>, we held that "even assuming [the officer] was deliberately indifferent to [the plaintiff's] Fourteenth Amendment rights . . . his actions [were] not conscience shocking" and therefore did not establish a substantive due process violation. <u>Id.</u> And while our court has rejected the notion "that a prolonged opportunity to deliberate should automatically be judged conscience-shocking behavior," we have also held that "[w]hile length of deliberation may be a factor in a conscience-shocking analysis, it cannot replace the over-arching need for deference to local policy-making bodies." <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1041 n.1 (10th Cir. 2006). Thus, we have stated that "'liability for deliberate indifference . . . rests upon the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the

-18-

pulls of competing obligations.'" Perez, 432 F.3d at 1166 (quoting Lewis, 523 U.S. at 853).

The next question, then, is what it is that the officer is deliberately indifferent toward or about. As the Eleventh Circuit has stated, "a substantive due process violation would, at the very least, require a showing of deliberate indifference to an extremely great risk of serious injury to someone in Plaintiffs' position." Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1306 (11th Cir. 2003). The Sixth Circuit has observed that "where there is the opportunity for 'reflection and unhurried judgments,' we have stated that government officials could be liable upon a showing that they were subjectively aware of a substantial risk of serious harm to the plaintiff." Hunt v. Sycamore Comm. Sch. Dist., 542 F.3d 529, 540 (6th Cir. 2008); see also Pena v. DePrisco, 432 F.3d 98, 114 (2d Cir. 2005) ("Whether termed 'deliberate indifference' or 'recklessness,' this mental state is sufficient to establish liability in such cases 'because it requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk.'") (quoting Woodward v. City of Worland, 977 F.2d 1392, 1399 n.11 (10th Cir. 1992)). We conclude that this middle level of culpability encompasses conscious, deliberate indifference to an extreme risk of very serious harm to the plaintiff. By "extreme," we mean egregious or outrageous to the extent that it shocks the judicial conscience.

**B. Application of Deliberate Indifference Standard to Deputy Post**

As applied to Deputy Post's conduct, we find that his actions do not meet the deliberate indifference standard. While it was surely negligent for him to speed through a yellow light in response to an official call which, while not an emergency, nonetheless required a rapid response, we cannot say it was more than that.[9] It does not "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Graves, 450 F.3d at 1221 (further quotation omitted); see also Terrell, 396 F.3d at 980 (holding, alternatively, that the officers were "entitled to summary judgment even under the deliberate indifference standard . . . [because] [t]raffic accidents of this nature are tragic but do not shock the modern-day conscience").

In so holding, we do not attempt to set out any bright-line rules regarding all police conduct. Given the Supreme Court's directive that we examine the particular circumstances of the case before deciding whether our consciences are shocked, such bright-line rules are difficult, if not impossible, to draw. We

---

[9]We note that, at the time Deputy Post's car entered the intersection and struck Green's car, he had, for some reason, turned off his lights and siren. That fact makes Deputy Post's conduct more problematic. Nonetheless, in the totality of the circumstances of this case, that fact does not elevate Deputy Post's conduct to the conscience-shocking level. Further, the accident reconstruction report includes other facts relevant to the events in this case. But, we do not find facts on appeal, nor do we resolve disputed facts on appeal. The videotape from the dashboard camera, of course, speaks for itself. See note 4, supra. As it shows, Deputy Post was in the intersection on a yellow light, when Green's car turned across Deputy Post's path.

simply hold that Deputy Post's conduct in this case does not rise to the level of conscience-shocking deliberate indifference. In so holding, we note that, while we are reviewing a question of law, we have satisfied ourselves, as did the Supreme Court in <u>Scott</u>, that the facts are as we have recited them. <u>See</u> n.4, <u>supra</u>.

### C. Clearly Established Law

Alternatively, even were we to conclude that the Greens can establish a constitutional violation under the middle-level standard, we would conclude that Deputy Post is entitled to qualified immunity because the law was not clearly established at the time of the incident. While it may have been clearly established that an officer can be liable if the plaintiffs show that he intended to harm the plaintiffs in the context of a high-speed pursuit, it was not clearly established what specific standard applied to the particular facts of this case—i.e., where the officer was engaged in a high-speed non-emergency response to a call to locate and arrest a suspected gas thief. We illustrate this uncertainty in the law by surveying Supreme Court, Tenth Circuit and other circuits' case law as of June 2006.

As indicated, <u>Lewis</u> established that the intent-to-harm standard applied to the situation where a police officer, responding to "outrageous behavior" by a suspect, engaged in an immediate "instinctive" high-speed pursuit and killed the

suspect. Lewis, 523 U.S. at 855. The Court directed courts to consider the totality of the particular circumstances to assess whether the lesser "deliberate indifference" standard applies when "actual deliberation is practical." Id. at 851. We examined and applied Lewis in Radecki, decided the same year as Lewis (1998), where an innocent third party was murdered by a suspect whom the police were attempting to arrest. We observed that the Supreme Court had:

> specifically recognize[d] that in the middle range of the culpability spectrum, where the conduct is more than negligent but less than intentional, there may be some conduct that is egregious enough to state a substantive due process claim. Within this middle range, Lewis directs us to analyze the level of culpability by examining the circumstances that surround the conduct at issue and the governmental interest at stake.

Radecki, 146 F.3d at 1231. Noting that the Court directed employment of the "'deliberate indifference' standard only when actual deliberation is practical," we "distinguish[ed] between emergency action and actions taken after opportunity for reflection." Id. at 1232. "Where the state actor has the luxury to truly deliberate about the decision he or she is making, something less than unjustifiable intent to harm, such as calculated indifference, may suffice to shock the conscience." Id. We then applied the Lewis intent-to-harm standard and found no constitutional liability: "Deputy Barela was confronted with a suddenly explosive law enforcement situation when Martinez tried to seize Barela's gun. . . . Deputy Barela had no time for deliberation . . . [and] was confronted with the kind of

-22-

instantaneous judgment call that is so often required . . . [in] emergency situations." Id.

In an unpublished decision issued in 1999, we simply applied the Lewis intent-to-harm standard, without discussion, to a high-speed police chase in which "[t]he vehicle pursued by the police crashed into the vehicle driven by [the plaintiff]." Carleton v. City of Tulsa, 166 F.3d 1220, 1999 WL 11282, at *1 (10th Cir. Jan. 13, 1999) (unpublished).[10] In Childress v. City of Arapaho, 210 F.3d

---

[10]In determining whether the law was clearly established, we have held that we may not rely upon unpublished decisions. See Medina v. City and County of Denver, 960 F.2d 1493, 1498-99 (10th Cir. 1992) ("The appellant cites to one unpublished ruling in the United States District Court for the District of Colorado, but because that ruling was unpublished the appellant cannot rely on it to prove the clearly established law in this jurisdiction."); but see, Hainey v. Sirmons, 2007 WL 2703166, at *7 (W.D. Okla. 2007) (unpublished) ("A constitutional right may be clearly established by unpublished decisions in this circuit or published decisions in other circuits.") (citing Anderson v. Blake, 469 F.3d 910, 914 (10th Cir. 2006)). Anderson simply stated that "[a] plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." Id. It says nothing about unpublished decisions.

The Fourth Circuit has given the most cogent explanation why unpublished opinions should not be considered in determining whether the law is clearly established: "Since unpublished opinions are not even regarded as binding precedent in our circuit, such opinions cannot be considered in deciding whether particular conduct violated clearly established law for purpose of adjudging entitlement to qualified immunity. We could not allow liability to be imposed upon public officials based upon unpublished opinions that we ourselves have determined will be binding only upon the parties immediately before the court." Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir. 1996); but see McCloud v. Testa, 97 F.3d 1536, 1555 n.28 (6th Cir. 1996) ("We recognize that our citation to unpublished cases, especially in the qualified immunity context, where the key inquiry is whether a principle of law is clearly established, may be perceived as

(continued...)

-23-

1154 (10th Cir. 2000), we applied the Lewis intent-to-harm test to a substantive due process claim brought against police officers by hostages injured when police pursued escaped state prison inmates, and we explicitly held that the "Lewis principles . . . apply whether the claimant is a police suspect or an innocent victim. The touchstone is whether the officers 'acted with an intent to harm the participants or to worsen their legal plight.'" Id. at 1157-58 (quoting Radecki, 146 F.3d at 1232).

In Sherwood v. Oklahoma County, 42 Fed. Appx. 353 (10th Cir. 2002) (unpublished), involving a substantive due process challenge to the decision of the Oklahoma County Sheriff to require the plaintiff to supervise inmates in the painting of county-owned vehicles, even after the defendants learned of the health hazards from the process and type of paint used, we discussed the differing time frames relevant to different situations: "Where there is time for thoughtful deliberation, defendants are held to a higher standard. Conversely, where

[10](...continued)
problematic. However, the use made of such cases here is appropriate for two important reasons. First, cases the court properly decides not to designate for publication should generally be uncontroversial and establish no new precedent. . . . Second, . . . citations to unpublished cases can be considered as having only the same persuasive force as the hypothetical examples we have devised."); Young v. Dept. of Corrections, 2007 WL 2214520, at *12 (E.D. Mich. 2007) (unpublished) ("The Ninth Circuit has held that unpublished decisions and the law of other federal jurisdictions may be reviewed in determining whether the law was clearly established.") (citing Prison Legal News v. Lehman, 397 F.3d 692, 701-02 (9th Cir. 2005); Hydrick v. Hunter, 466 F.3d 676, 690 (9th Cir. 2006)).

circumstances necessitate split second judgments, the Court has held a much higher standard of fault than deliberate indifference has to be shown for liability." Id. at 359.

In 2005, in Perez, we examined the Lewis standard in a context more like the instant case: a firefighter, speeding to respond to an emergency call, hit and killed a motorist while going through an intersection on a red light, in the wrong lane, with siren and emergency lights activated. We observed that "Lewis established a clear rule: When governmental officials face a situation 'calling for fast action,' only official conduct done with an intent to harm violates the Fourteenth Amendment." Perez, 432 F.3d at 1166 (quoting Lewis, 523 U.S. at 853)). Noting that the facts in Perez presented a "paradigmatic example" of a decision made in haste and under pressure, to which the Lewis intent-to-harm standard properly applies, we expressed our agreement with the Eighth Circuit: "'the intent-to-harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.'" Id. at 1167 (quoting Terrell, 396 F.3d at 978). We further observed that "[n]o case has applied the deliberate indifference standard to a situation where a governmental official is responding to an emergency," and "[i]t simply cannot be said that the decision to drive quickly—even recklessly so—in response to an emergency call shocks the conscience." Accordingly, we held that

the officer was entitled to qualified immunity as a matter of law, since the plaintiffs failed to allege an intent to harm.[11]

Thus, as of June 16, 2006, the date of the tragic encounter between Deputy Post and Willis Green, decisions of the Supreme Court and our court clearly established the following: a police officer *could* be liable under the Fourteenth Amendment substantive due process clause if, in pursuing a suspect in an emergency situation which was "rapidly evolving, fluid, and dangerous . . . [and] which preclude[s] the luxury of calm and reflective deliberation," either a suspect or an innocent bystander was harmed, and the plaintiffs established that the officer acted with either an intent to harm the victim or a conscience-shocking deliberate indifference to such harm. Perez, 432 F.3d at 1167. What was not established was what constitutes an "emergency" situation, and whether the circumstances of a high-speed police chase or response always, or only sometimes, make a situation "rapidly evolving, fluid, and dangerous" and "preclude the luxury of calm and reflective deliberation." Nor does the law from other circuits provide a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." Bergeron, 560 F.3d at 11 (further quotation omitted).

---

[11]We decided Graves a few days after the crash in which Green was killed, and it is thus not relevant to whether the law was clearly established at the time of the incident. It was a case involving a high-speed chase of a suspect which, like Lewis, resulted in a crash which killed the suspect.

-26-

The First Circuit in DePoutot v. Raffaelly, 424 F.3d 112 (1st Cir. 2005), merely observed that it had "found no substantive due process liability in situations in which law enforcement officers committed reprehensible but less egregious acts, such as . . . participating in reckless high-speed car chases resulting in fatalities." Id. at 119 (emphasis added). The Second Circuit has stated:

> Determining whether the conscience is shocked by lesser levels of culpability than intentional infliction of physical harm requires us to make "closer calls." In the context of action by a law enforcement official during a high-speed chase, as in Lewis, or a hostage situation, as in Medeiros v. O'Connell, 150 F.3d 164 (2d Cir. 1998), "an intermediate level of fault, such as recklessness, is not enough to impose constitutional liability." Id. at 170.

Pena v. DePrisco, 432 F.3d 98, 113 (2d Cir. 2005). The Third Circuit has described its jurisprudence in this area as "difficult to discern." Sanford v. Stiles, 456 F.3d 298, 305 (3d Cir. 2006).[12] It noted that, in 1999, it had "first utilized a standard part way between intent to harm and deliberate indifference," which it defined as "gross negligence or arbitrariness that indeed 'shocks the conscience.'" Id. at 306 (quoting Miller v. City of Philadelphia, 174 F.3d 368, 375-76 (3d Cir. 1999)), and which applied "to cases in which no immediate or split-second decision was required, but where officials nonetheless did not have the luxury of

_____

[12]Sanford was decided a couple of months after Green was killed. And while it was a case involving the standard of culpability for a state-created danger theory of substantive due process violations, the court discussed Lewis and the culpability standards for substantive due process violations generally.

-27-

true deliberation." Id.[13]  In Ziccardi v. City of Philadelphia, 288 F.3d 57 (3d Cir.

2002), a plaintiff "brought a substantive due process claim against two

paramedics, asserting that their careless actions in lifting him from a fall rendered

him a quadriplegic."  Sanford, 456 F.3d at 307.  In that case, the court formulated

the following standard "for circumstances where no instantaneous decision is

necessary, but where the state actor also does not have the luxury of proceeding

in a deliberate fashion:  A plaintiff must show that the 'defendant[] consciously

disregarded, not just a substantial risk, but a *great* risk that serious harm would

result."  Id. (quoting Ziccardi, 288 F.3d at 66)).

Thus, the Third Circuit derived the rule that:

[t]he level of culpability required to shock the conscience increases
as the time state actors have to deliberate increases.  In a
'hyperpressurized environment,' an intent to cause harm is usually
required.  On the other hand, in cases where deliberation is possible
and officials have the time to make 'unhurried judgments,' deliberate
indifference is sufficient.

Id. at 309; see also Rivas v. City of Passaic, 365 F.3d 181, 195-96 (3d Cir. 2004)

("We announced in Brown that '"the shocks the conscience"' standard should

apply in all substantive due process cases if the state actor had to act with some

urgency.  This has been the law for police pursuit cases . . . .") (quoting Brown v.

---

[13]The Third Circuit accordingly "articulated three possible standards to determine whether behavior rose to the level of conscience-shocking: 1) deliberate indifference; 2) gross negligence or arbitrariness that indeed 'shocks the conscience'; and 3) intent to harm."  Sanford, 456 F.3d at 306.

Commonwealth of Pa. Dept. of Health Emerg. Med. Servs. Training Inst., 318

F.3d 473, 480 (3d Cir. 2003)); see also Davis v. Township of Hillside, 190 F.3d

167, 170-71 (3d Cir. 1999).

In an unpublished Sixth Circuit case, the court adopted the following

discussion by the federal district court:

> High-speed pursuits, by their very nature, do not permit the
> deliberations required to apply the "deliberate indifference" standard.
> When executive action is the result of unhurried judgment, the
> chance for repeated reflection, and uncomplicated by the pulls of
> competing obligations, then deliberate indifference is truly shocking.
> Categorically, however, the nature of high-speed pursuits—their ever
> evolving nature, the number of contingencies, the scant information
> available, the high pressure environment, the absence of hindsight or
> second chances, and the abbreviated time period in which to make
> decisions—requires that the Court apply the Lewis standard to all
> high speed pursuit scenarios.

Epps v. Lauderdale County, Tenn., 45 Fed. Appx. 332, 333-34 (6th Cir. 2002)

(unpublished). Citing Epps, as well as an Eighth Circuit case discussed below,

the Sixth Circuit has stated that "'the intent-to-harm standard of Lewis applies to

all § 1983 substantive due process claims based upon the conduct of public

officials engaged in a high-speed automobile chase aimed at apprehending a

suspected offender,' regardless of whether the chase conditions arguably afforded

pursuing officers time to deliberate." Meals v. City of Memphis, 493 F.3d 720,

730 n.8 (6th Cir. 2007) (quoting Helseth v. Burch, 258 F.3d 867, 871 (8th Cir.

2001) (en banc)).

The Seventh Circuit has been reluctant to apply any standard other than the intent-to-harm standard to police officers causing injury while performing their job. See, e.g., Carter v. Simpson, 328 F.3d 948 (7th Cir. 2003) (upholding the grant of summary judgment to defendant officer where he, in responding to a dispatch with lights and siren on, went through an intersection on a red light and hit car driven by plaintiff); Bublitz, 327 F.3d 485 (finding neither the shock-the-conscience nor the deliberate indifference standards met where police used tire-deflation device to stop a fleeing robbery suspect, which caused an accident which killed two bystanders and injured one). "The shocks-the-conscience standard . . . does . . . require substantial culpability. It is generally only *deliberate* action intended to harm another that is the type of conduct targeted by the Fourteenth Amendment. In fact, in applying the rule from Lewis, we have held that 'The *sine qua non* of liability in cases analogous to high-speed chases . . . is a purpose to harm.'" Bublitz, 327 F.3d at 491 (quoting Schaefer, 153 F.3d 793, 798 (7th Cir. 1998)); see also Steen v. Myers, 486 F.3d 1017 (7th Cir. 2007).

The Eighth Circuit has adopted a broad rule applicable to high-speed car chases: "'the intent-to-harm standard of Lewis applies to all § 1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender,' regardless of whether the chase conditions arguably afforded pursuing officers time to deliberate." Terrell, 396 F.3d at 977 (quoting Helseth v. Burch, 258 F.3d 867,

-30-

871 (8th Cir. 2001) (en banc)).  The court has expanded its holding:  "the intent-

to-harm standard of <u>Lewis</u> applies to an officer's decision to engage in high-speed

driving in response to other types of emergencies, and to the manner in which the

police car is then driven in proceeding to the scene of the emergency."  <u>Id.</u> at 979.

Additionally, whether there is an emergency "turns on whether the deputies

subjectively believed that they were responding to an emergency."  <u>Id.</u> at 980.

The Ninth Circuit has recently expressed its agreement with the Eighth

Circuit, and held that "the <u>Lewis</u> standard of 'intent to harm' applies to all high-

speed police chases."  <u>Bingue v. Prunchak</u>, 512 F.3d 1169, 1177 (9th Cir. 2008);

<u>see also</u> <u>Porter v. Osborn</u>, 546 F.3d 1131, 1139 (9th Cir. 2008) ("<u>Lewis</u> and our

cases . . . require that when an officer encounters fast paced circumstances

presenting competing public safety obligations, the purpose to harm standard

must apply.").[14]  However, that general rule was not clearly established at the

time relevant to this case—June 2006.  The Eleventh Circuit has applied the

_____

[14]To illustrate the degree to which the law in this general area is evolving, we note the Ninth Circuit's observation as follows, in a case decided in January 2008:

> It remains an open question in our circuit whether the "intent to harm" standard applies categorically to Fourteenth Amendment due process claims arising out of all high-speed police chases, or whether there are some kinds of high-speed chases in which a "deliberate indifference" standard applies.

<u>Bingue</u>, 512 F.3d at 1175.  The Ninth Circuit proceeded to follow the Eighth Circuit in adopting the "intent-to-harm" standard for all high-speed police chases.

intent-to-harm test without analysis to a high-speed car chase resulting in a crash and injury to a passenger riding in the speeding car. Vaughan v. Cox, 343 F.3d 1323 (11th Cir. 2003); cf. Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) (holding, pre-Lewis, that "driving at a high rate of speed in a non-emergency or non-pursuit situation reveals gross negligence" but is not a constitutional deprivation).

Our recitation of these cases from various circuits, many of which involve high-speed police pursuits, is not intended to suggest that the case before us fits into the category of a high-speed police pursuit. Indeed, our review of the cases indicates that there are no clear categories of cases into which we can neatly fit a particular situation. Rather, there are many permutations on the theme of police pursuits; while most involve high speeds, there are many variables, including whether the officer is responding to an emergency or not, whether he or she is directly pursuing a fleeing suspect or not, and, significantly under Lewis and cases interpreting it, whether the officer has time for actual deliberation. The conundrum presented by this last factor—whether the officer has time to deliberate—is what appears to have led some courts to simply declare that all high-speed police pursuits are evaluated under an intent-to-harm standard, "regardless of whether the chase conditions arguably afforded pursuing officers time to deliberate." Terrell, 396 F.3d at 977 (further quotation omitted).

-32-

It accordingly appears to us that, as of June 2006, there was no general

consensus of cases that would have led Deputy Post to know that his conduct in

speeding through an intersection on a yellow light, in pursuit of a reported gas

thief but not responding to an "emergency," without his lights and siren on, would

violate the substantive due process rights of Green, absent an intent or purpose to

harm Green. And, there is clearly no evidence that Post had any such malicious

intent or purpose. While Post was, by his own admission, not faced with an

emergency call, that circumstance does not clarify the standard of liability in this

circuit; it merely suggests that there may have been more opportunity for Post to

deliberate, and arguably the public interest served by his response was slightly

less.[15] But, while a few circuits have held that officers involved in all high-speed

pursuits are subject to an intent-to-harm standard of culpability, this circuit has

not so held, and we have not provided any clear guidance on when an officer

---

[15]As the Supreme Court stated in Lewis, "[a] police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders." Lewis, 523 U.S. at 853. The public interest being served by the officer's pursuit or response may vary with the severity of the suspected crime. Thus, there may be more justification for a high-speed pursuit to apprehend a suspected murderer/terrorist/armed bank robber, or a suspected drunk driver, or to respond to a domestic disturbance call, than, say, to apprehend someone who has committed a minor traffic violation or non-violent misdemeanor. In our case, the suspect was thought to have stolen $30 of gas, a misdemeanor under Colorado law, if it was a simple theft. See Colo. Rev. Stat. Ann. § 18-4-401(1), (2).

-33-

responding to a non-emergency police call–more particularly, a rapid response to such a call--does and/or does not have time to deliberate.  In sum, we cannot say that the law was clearly established in June 2006, such that a reasonable officer in Deputy Post's situation would have known that his conduct was a violation of Green's constitutional rights.

## II.  Pendent Appellate Jurisdiction

The defendants ask us to exercise pendent appellate jurisdiction over the Greens' claims against the PCSD and reverse the district court's refusal to dismiss that entity from this lawsuit.  "It is appropriate to exercise pendent appellate jurisdiction only where resolution of the appealable issue necessarily resolves the nonappealable issue, or where review of the non appealable issue is necessary to ensure meaningful review of the appealable one."  Buck v. City of Albuquerque, 549 F.3d 1269, 1293 (10th Cir. 2008) (further quotation omitted).  "Our exercise of pendent appellate jurisdiction, though, is 'generally disfavored.'"  Vondrak v. City of Las Cruces, 535 F.3d 1198, 1205 (10th Cir. 2008) (quoting Roska ex. rel. Roska v. Sneddon, 437 F.3d 964, 970 (10th Cir. 2006)).  The defendants have conceded that they agree with the Greens that we could not exercise pendent appellate jurisdiction "if the Court affirms the district court's order denying qualified immunity to Post."  Appellant's Reply Br. at 15.

In light of our reversal of the district court's decision, and the necessity that summary judgment be granted to Deputy Post on the ground of qualified immunity, we exercise pendent appellate jurisdiction over the constitutional claims against the PCSD. We have held that "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers." Graves, 450 F.3d at 1218 (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). We accordingly reverse the district court's denial of the motion for dismissal/for summary judgment filed by the PCSD and remand for entry of summary judgment for the PCSD.

## CONCLUSION

For the foregoing reasons, we REVERSE the decision of the district court and REMAND this matter for further proceedings consistent herewith.