**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ANGELA PEREZ and HECTOR
BECERRA,

     Plaintiffs-Appellees,

v.

UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY/KANSAS
CITY, KANSAS; KANSAS CITY,
KANSAS FIRE DEPARTMENT,

     Defendants,

     and

ANTHONY W. MOTS, individually
and in his official capacity, Kansas
City, Kansas Fire Department,

     Defendant-Appellant.

No. 04-3397

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. CV-02-2492-DJW)**

---

Michael W. Shunk, Long, Luder & Gordon, P.A., Overland Park, Kansas for the Defendant-Appellant.

Daniel J. Cohen, Lakin Law Firm, Wood River, Illinois (Davy C. Walker, The Law Offices of Davy C. Walker, Kansas City, Kansas with him on the briefs) for the Plaintiffs-Appellees.

---

Before **LUCERO**, **BRORBY** and **HARTZ**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Anthony Mots, a firefighter, seeks qualified immunity from a claim that he violated the constitutional rights of Aaron Becerra when his fire truck collided with Becerra's car. Because Mots was responding to an emergency call and because it is not alleged that Mots intended to harm Becerra, we conclude that Mots is entitled to qualified immunity as a matter of law. We **REVERSE** the district court's denial of summary judgment and **REMAND** with directions to dismiss Becerra's 42 U.S.C. § 1983 claims.

## I

Mots is a firefighter employed by the Kansas City, Kansas Fire Department, a division of the Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government"). He was stationed at Pumper Station 9 when a house fire was reported over the dispatch system. He was dispatched to the fire and turned on his fire truck's emergency lights and siren as soon as he left the station.

To reach the fire, Mots drove his fire truck westbound on Central Avenue, a major thoroughfare. Because it was an emergency call, he was speeding. According to an eye witness, Mots was traveling down Central Avenue at forty miles-per-hour, exceeding the thirty mile-per-hour speed limit.

Where Central Avenue crosses 18th Street is a five-way intersection; another major thoroughfare, Park Drive, shoots off this intersection to the southwest. The configuration of the buildings on this corner can block emergency lights and the sound of a siren. According to several witnesses, there was a red light when Mots approached the intersection. Mots testified that he did not remember whether there was a red light when he reached the corner, but, if there had been, it would have been visible for several blocks as he approached the intersection.

Before he reached 18th Street, Mots moved into the eastbound lane of oncoming traffic on Central Avenue because westbound traffic would not move in response to his siren and emergency lights. He also blew his air horn to warn other cars about his approach.

Mots slowed down as he approached the intersection, but did not stop. He then sped up as he went through it. The materials used to train Kansas City firefighters recommend that drivers should come to a complete stop before

entering a negative right-of-way intersection,[1] but the Fire Department's official policy does not require vehicles to come to a complete stop.

Becerra entered the intersection going eastbound on Central Avenue. Mots did not see Becerra's car until a split second before he slammed into it. Several eyewitnesses – including one in a car that Mots swerved around – said that Becerra's car was visible coming headlong into Mots's path. An accident reconstruction expert stated that the firetruck hit Becerra's car in a direct collision at twenty three to twenty four miles per hour. Becerra died as a result of injuries sustained in the accident.

Hector Becerra ("Hector"), administrator of Becerra's estate, brought suit against Mots and the Unified Government. He was joined as a plaintiff by Angela Perez, who brought her claim on behalf of Sabrina Becerra, Becerra's daughter and legal heir.[2] They each alleged violations of the Kansas Tort Claims Act, Kan. Stat. Ann. § 75-6101 et seq., and violations of Becerra's constitutional rights under 42 U.S.C. § 1983 by Mots and by the Unified Government. Hector and Perez claimed that Mots violated Becerra's Fourteenth Amendment rights and that the Unified Government failed to properly train and supervise Mots and had

---

[1] A negative right-of-way intersection is any intersection at which a driver faces a red light or a stop sign.

[2] Angela Perez is birth mother, legal guardian and next friend to Sabrina Becerra.

policies that caused Becerra's death. The Unified Government and Mots moved for summary judgment on the § 1983 claims. Mots asserted in his motion that the § 1983 claim against him was barred by qualified immunity.

The district court dismissed Perez's § 1983 claims for lack of standing but held that there were questions of material fact that precluded summary judgment on Hector Becerra's § 1983 claim against Mots. Specifically, it found that there were questions of material fact about both the proper standard to apply and the result upon the application of the applicable standard. Utilizing a novel reading of the Supreme Court's decision in County of Sacramento v. Lewis, 523 U.S. 833, 851 (1998), the court held that there was a question of material fact as to whether Mots' action should be evaluated under a "deliberate indifference" or an "intent to harm" test. It further determined that there were questions of material fact as to whether Mots showed deliberate indifference to the life and liberty of Becerra. Finally, it held that Supreme Court jurisprudence clearly established the right Mots allegedly violated. As such, it denied Mots' motion for summary judgment. Mots filed an interlocutory appeal to this court challenging this denial.

**II**

Government officials who perform discretionary functions are entitled to qualified immunity if their conduct does not violate clearly established rights of which a reasonable government official would have known. Hulen v. Yates, 322

F.3d 1229, 1236 (10th Cir. 2003). When a defendant raises a qualified immunity defense, the plaintiff bears the burden of establishing that the defendant's conduct violated a constitutional or statutory right and that the right was clearly established at the time of conduct. Id. at 1237.

We have jurisdiction to hear purely legal questions that arise from interlocutory appeals of denials of summary judgment motions based on qualified immunity. Perez v. Ellington, 421 F.3d 1128, 1131 (10th Cir. 2005). "Our inquiry focuses on 'whether the facts alleged support . . . a claim of a violation of clearly established law.'" Id. at 1128 (quoting Mitchell v. Forsyth, 472 U.S. 511, 528 (1985)). If de novo review of the alleged facts demonstrates that they do not amount to a violation of a clearly established right, we reverse a denial of summary judgment on qualified immunity grounds. Id. If a plaintiffs' version of the facts does amount to a violation of a clearly established right, we lack jurisdiction to review the denial of summary judgment on an interlocutory basis for sufficiency of the evidence. Id; see also Johnson v. Jones, 515 U.S. 304, 313-18 (1995).

Hector alleges that Mots violated the Fourteenth Amendment by crashing into Aaron Becerra's car. The Due Process Clause has a substantive component, which bars "certain government actions regardless of the fairness of the procedures used to implement them." Lewis, 523 U.S. at 840 (quoting Daniels v.

<u>Williams</u>, 474 U.S. 327, 331 (1986)).  Substantive due process protects individuals against "arbitrary action of government" that deprives a citizen of life, liberty or property "whether the fault lies in a denial of fundamental procedural fairness . . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective."  <u>Id.</u> at 845-46 (citations and quotations omitted).

That said, the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States."  <u>Id.</u>, 523 U.S. at 848 (quoting <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976)).  Only government conduct that "shocks the conscience" can give rise to a substantive due process claim.  <u>Id.</u>

In <u>Lewis</u>, the Supreme Court clarified how courts should determine whether government action shocks the conscience.  The Court held that a police officer who slammed his car into a motorcycle during a high-speed chase did not violate the Fourteenth Amendment because there was no allegation that the officer intended to harm the motorcycle driver.  <u>Lewis</u> established a clear rule:  When governmental officials face a situation "calling for fast action," only official conduct done with an intent to harm violates the Fourteenth Amendment.  <u>Id.</u> at 853.  "[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to

spark the shock that implicates the large concerns of the governors and the governed." Id. (internal quotations and citations omitted).

The Court acknowledged, however, that behavior that would not violate the Fourteenth Amendment if done in a time-sensitive, high-pressure situation may nevertheless shock the conscience if the official has time to deliberate before acting. Thus, the Court held that when a government official has enough time to engage in "actual deliberation," conduct that shows "deliberate indifference" to a person's life or security will shock the conscience and thereby violate the Fourteenth Amendment. Id. at 851. "[L]iability for deliberate indifference . . . rests upon the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." Id. at 853.

The Court cautioned that "actual deliberation" meant more than having a few seconds to think. It stated:

> By 'actual deliberation,' we do not mean 'deliberation' in the narrow, technical sense in which it has sometimes been used in traditional homicide law. See, e.g., Caldwell v. State, 203 Ala. 412, 84 So. 272, 276 (Ala. 1919) (noting that "deliberation here does not mean that the man slayer must ponder over the killing for a long time"; rather, "it may exist and may be entertained while the man slayer is pressing the trigger of the pistol that fired the fatal shot[,] even if it be only for a moment or instant of time").

Lewis, 523 U.S. at 851 n.11 (emphasis added). The intent to harm standard is not limited to situations calling for split-second reactions. Rather, it applies

whenever decisions must be made "in haste, under pressure, and frequently without the luxury of a second chance." Id. at 853. As the Eighth Circuit recently noted, "the intent-to-harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation." Terrell v. Larson, 396 F.3d 975, 978 (8th Cir. 2005) (en banc).

We have not had occasion to apply Lewis to a situation where a firefighter or police officer is involved in an automobile accident while responding to an emergency call.[3] However, it is clear from Lewis that the intent to harm standard applies in this case. A firefighter responding to a house fire has no time to pause. He has no time to engage in calm, reflective deliberation in deciding how to

---

[3] We did face the question before the Supreme Court decided Lewis. Under our pre-Lewis jurisprudence, even extremely reckless driving by an emergency response provider did not constitute a violation of the substantive due process clause. In Apodaca v. Rio Arriba County Sheriff's Dep't, 905 F.2d 1445, 1447 (10th Cir. 1990), plaintiffs alleged that a police officer violated their substantive due process rights when he crashed into them when responding to an emergency call. The officer was engaged in reckless driving that exceeds anything alleged in this case; he was speeding around a blind curve in the middle of the night in rain and sleet without his siren or lights on. Id. at 1446. We held that, as a matter of law, the "negligent operation of a vehicle by a police officer does not rise to the level of a constitutional violation." Id. at 1447. We specifically rejected the argument that the officer's conduct exceeded negligence and was hence actionable. "[I]n whatever manner plaintiffs attempt to dress up their claims, their cases come down to allegations that [the officer] was driving too fast for the road and visibility conditions." Id. at 1447 n.3.

respond to an emergency call. Doing so would risk lives. This case presents a paradigmatic example of a decision that must be made in haste and under pressure.

Two other circuits and one state supreme court have addressed cases nearly identical to this one and have applied Lewis's intent to harm standard as well. In Carter v. Simpson, 328 F.3d 948, 949 (7th Cir. 2003), the plaintiff alleged that a police officer violated the Fourteenth Amendment by responding to an emergency call by speeding, changing lanes into on-coming traffic, and crashing into another car at an intersection, killing the driver. It held that the intent to harm standard applies in all cases where officers respond to an emergency call. "Although [the officer] was not engaged in a highspeed chase (as in Lewis), he was responding to an emergency call. Because there was no evidence that he intended to cause any harm, the district court correctly granted summary judgment for [the officer]." Id. at 952.

The same result was reached by the Eighth Circuit in Terrell. There, police officers decided to provide extra back-up to a reported domestic disturbance. They drove through a red light and crashed into another car. Because the plaintiffs, next of kin to a driver killed in the accident, did not allege an intent to harm, they could not sustain a § 1983 claim based on the police officer's violation of the Fourteenth Amendment. "[T]he intent-to-harm standard of Lewis applies

to an officer's decision to engage in high-speed driving in response to other types of emergencies, and to the manner in which the police car is then driven in proceeding to the scene of the emergency." Terrell, 396 F.3d at 980-81.

Likewise, in Norton v. Hall, 834 A.3d 928 (Me. 2003), the Maine Supreme Court held that a police officer's allegedly reckless driving while responding to a report of an "out-of-control" child in the home of a suspected child abuser (which led to a car crash) was the type of behavior that called for the application of the intent to harm standard. "To respond effectively to an emergency, an officer must make an immediate decision. [The officer] weighed her concern for the welfare of a child . . . against the risk of speeding and exposing other citizens to danger. Under these circumstances, . . . the highest standard of 'intent to harm' applies." Id. at 934. No case has applied the deliberate indifference standard to a situation where a government official is responding to an emergency.

Determining whether an emergency response provider was reckless in his driving depends on the danger posed by the emergency, the traffic conditions in a locality, and numerous other factors. State and local policy-makers can and do make rules governing how their emergency response providers should drive and the consequences for failing to do so. However, it simply cannot be said that the decision to drive quickly – even recklessly so – in response to an emergency call shocks the conscience.

In holding that there was a question of material fact as to whether the deliberate indifference standard should apply the district court committed a mistake of law.[4]  Under <u>Lewis</u>, the court should have applied the intent to harm standard.  We may have remanded the case to the district court for application of the proper standard, but Becerra conceded at oral argument that there were no allegations and no facts in this case that supported a claim that Mots had an intent to harm.  Because there is no such allegation in the complaint, we need not reach the question of what showing is necessary to evince an intent to harm.  We simply hold that a bystander hit by an emergency response vehicle in the process of responding to an emergency call cannot sustain a claim under the substantive due process clause without alleging an intent to harm.  As such, Mots should be granted qualified immunity.

Accordingly, we **REVERSE** the district court's denial of summary judgment and **REMAND** with directions to dismiss Hector's § 1983 claims.

---

[4] Determining the proper legal standard is generally a question of law, not a question of fact.  <u>Terrell</u>, 396 F.3d at 981 (8th Cir. 2005) ("Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury."); <u>see also</u> <u>City of Monterey v. Del Monte Dunes at Monterey, Ltd.</u>, 526 U.S. 687, 753 (1999) (Souter, J., concurring in part and dissenting in part) ("Substantive due process claims are, of course, routinely reserved without question for the court.") (citing <u>Lewis</u>, 523 U.S. at 853-55).