FILED
United States Court of Appeals
Tenth Circuit

June 11, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

—————————

MICHAEL J. WAUGH,

      Plaintiff - Appellee,

v.

JUSTIN M. DOW, Deputy,

      Defendant - Appellant,

and

STATE OF OKLAHOMA; MAJOR
COUNTY; CHARLES A. PHILLIPS,
Deputy; JOSHUA W. DOW, Deputy;
WILL LEATHERMAN, Bail Bondsman;
ROBERT E. PETTIGREW, Bounty
Hunter; MICHAEL G. BELCHER,
Bounty Hunter,

      Defendants.

No. 14-6135
(D.C. No. 5:11-CV-01419-C)
(W.D. Okla.)

—————————

**ORDER AND JUDGMENT**[*]

—————————

Before **BRISCOE**, Chief Judge, **LUCERO** and **MATHESON**, Circuit Judges.

—————————

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff Michael Waugh brought this pro se civil rights action after being shot by defendant Joshua Dow, a private citizen who had been armed by his brother, defendant Sheriff's Deputy Justin M. Dow, and asked to assist in Mr. Waugh's apprehension. Deputy Dow now appeals from an order of the district court that, among several other rulings not before us, denied his motion for summary judgment asserting qualified immunity for his indirect role in the shooting of Mr. Waugh. On de novo review of the purely legal issues raised on appeal, *see Aldaba v. Pickens*, 777 F.3d 1148, 1154 (10th Cir. 2015), we affirm the decision of the district court.

## I. FACTUAL BACKGROUND

In the context of a qualified immunity appeal, "if the district court holds that a reasonable jury could find certain facts in favor of the plaintiff, we generally take these facts as true, even if the record would suggest otherwise upon our de novo review." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 878 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 975 (2015). There are limited exceptions to this rule, *id.* at 878 n.2, but they do not apply here.

The district court's order adopting the magistrate judge's recommendation succinctly outlined most of the primary relevant facts:

> In June 2010 an arrest warrant was issued for Plaintiff. In August of 2010, Plaintiff was found at a convenience store by two recovery agents who were private citizens hired by the bail bond company. The recovery agents attempted to detain Plaintiff and a struggle ensued from which Plaintiff fled on foot. The recovery agents then called the Major County Sheriff's Department requesting assistance. Deputy Phillips responded to that call. Deputy Phillips requested additional assistance,

a request that was responded to by Deputy Dow. At the time he responded to the call, Deputy Dow was off-duty and was driving in his personal vehicle with his brother, Defendant Joshua Dow. After receiving the call and agreeing to assist, Deputy Dow headed in the direction where Plaintiff was last seen. After learning from some local residents that Plaintiff had been seen entering a wooded area, Deputy Dow gave his brother, Joshua Dow, his backup weapon and a badge, instructing him to enter the woods to try to locate Plaintiff. While Joshua Dow was doing this, Deputy Dow would then drive to the other side of the woods and set up a perimeter. After entering the woods, Joshua Dow eventually located Plaintiff. Joshua Dow then shot Plaintiff in the leg, injuring him.

App. at 289-90 (footnote omitted). The district court noted one other particular factual matter, regarding the time Deputy Dow had to deliberate about his course of action, which determined the appropriate substantive due process standard to be used in assessing the constitutionality of his conduct (a point we return to later):

Deputy Dow argues [the magistrate judge] applied an incorrect legal standard in determining whether Deputy Dow's actions shocked the conscience. The Court disagrees. The cases cited by Deputy Dow dealt with the need to make a split second decision during a high speed chase. Here, while there is some dispute regarding the amount of time, it is apparent that Deputy Dow had time for actual deliberation. Thus, the proper standard evaluates whether [his] conduct was conscience shocking by examining whether [he] showed a deliberate indifference to an extreme risk of very serious harm to the plaintiff.

*Id.* at 290-91 (citation and internal quotation marks omitted).

The magistrate judge's report and recommendation, which the district court adopted without qualification, included two additional factual details relevant to our review. First, the dispatch to which Deputy Dow responded misidentified the bail bond recovery agents assaulted by Mr. Waugh as "fugitive apprehension agents," i.e., Oklahoma Department of Corrections officers who locate, apprehend, and return

- 3 -

escaped offenders.[1] *Id.* at 187 & n.6. Second, Joshua Dow shot Mr. Waugh after one of these ostensible officers told him to shoot. *Id.* at 189.

There is one other matter, with both factual and legal aspects, that warrants acknowledgment. One of the reasons the magistrate judge cited for holding that Deputy Dow's conduct could be found actionably reckless was that he lacked authority to seek assistance from a private citizen in apprehending Mr. Waugh. *See id.* at 200-01. For this point the magistrate judge referred to an affidavit submitted by the Major County Sheriff addressing matters relating chiefly to the potential liability of the County. In the affidavit, the Sheriff stated that Deputy Dow did not have authority, and specifically was not given such authority by the Sheriff, to assign Joshua Dow to assist in Mr. Waugh's apprehension. No independent source—rule, policy, regulation, statute—is cited for this statement. And the statement, insofar as it concerned Deputy Dow's inherent authority, is contrary to an Oklahoma statute (which Deputy Dow said he knew about at the time) entitled "Officer may command assistance": "When a . . . public officer authorized to execute process, finds, or has reason to apprehend that resistance will be made to the execution of the process, he may command as many male inhabitants of his county as he may think proper . . . to assist him in overcoming the resistance, and if necessary, in seizing, arresting and confining the resisters and their aiders and abettors, to be punished according to law."

---

[1] These agents also carried handcuffs and wore badges similar to those worn by Major County Sheriff's Deputies. App. at 185.

Okla. Stat. Ann. tit. 22, § 91.[2]  In light of this statute, we do not follow the magistrate

judge in accepting as a fact that Deputy Dow lacked authority to ask for his brother's

assistance.  We do accept as a fact, however, that he had no specific authorization

from the Sheriff to do so in connection with the incident underlying this action.

## II.  DISTRICT COURT RULING

Although Mr. Waugh did not expressly invoke this theory of liability, the

magistrate judge construed his pro se pleadings to assert a substantive due process

claim against Deputy Dow based on a "state created danger" theory.  Such a claim

allows for the imposition of liability on a state actor for injury caused by another,

private party.  There are two preconditions for such a claim:  (1) the state actor must

have engaged in some affirmative action that (2) led to private violence.  *Estate of

B.I.C. v. Gillen*, 761 F.3d 1099, 1105 (10th Cir. 2014).  If these preconditions are

met, the plaintiff may prevail on the claim by establishing the following elements:

> (1) the charged state . . . actor[] created the danger or increased
> plaintiff's vulnerability to the danger in some way; (2) plaintiff was a
> member of a limited and specifically identifiable group[3];

---

[2]     The statute does not address arming citizens commandeered for assistance, or giving them official badges.  We need not definitively construe the import of the statute in this respect in order to take note of its relevance to an assessment of Deputy Dow's conduct.  In his reply brief, Deputy Dow belatedly cites additional, essentially redundant statutory authority for obtaining citizen assistance.  *See* Okla. Stat. Ann. tit. 19, § 516.  He also cites authority for deputizing citizens, *see id*. tit. 19, § 548, as construed in *Nickell v. State*, 746 P.2d 1155, 1157 (Okla. Crim. App. 1987), but he never claimed to have deputized Joshua.

[3]     This is not "protected group" element of the sort required in equal protection and employment discrimination contexts.  It just means that the danger must have been directed at the plaintiff in a way that it was not directed at the general public.

(continued)

(3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendant[] acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

*Id.* (alteration omitted); *see also Currier v. Doran*, 242 F.3d 905, 918, 924 (10th Cir. 2001) (setting out same elements and noting that state-created danger jurisprudence was clearly established in this circuit by late 1994).

The magistrate judge first determined that the two preconditions "clearly could be satisfied under the undisputed facts of this case." App. at 197. As for the requisite affirmative act, the magistrate judge noted that "Deputy Dow admits that he voluntarily handed over his loaded gun and Reserve Deputy Sheriff badge to Joshua Dow, drove Joshua Dow to the area where the Plaintiff had been seen, and asked Joshua Dow . . . to locate and assist with apprehending [Mr. Waugh]." *Id.* As for the requisite private violence, the magistrate judge noted that "it is undisputed that Joshua Dow's actions constituted 'private' – i.e., non-state-actor – conduct." *Id.* at 197-98. The magistrate judge went on to hold there was a sufficient evidentiary basis for a jury to find facts that would, in turn, satisfy the elements of the state-created danger claim. *See id*. at 198-205.

The magistrate judge then considered whether the operative constitutional principle was established with sufficient clarity that a reasonable officer in his

---

*See Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 926-27 (10th Cir. 2012) (discussing *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008), and *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002)).

- 6 -

position would have understood that he was violating it, so as to preclude qualified immunity. *Id.* at 205-07. The magistrate judge dismissed Deputy Dow's objection that there were no factually analogous decisions to put him on notice that his conduct was unconstitutional, explaining that a plaintiff need not present an identical case to show the law was clearly established and that officials "'can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Id.* at 206-07 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Noting that constitutional liability for private violence arising from state-created dangers was well established, the magistrate judge concluded that "a reasonable official in Deputy Dow's position on August 28, 2010 would have understood that his conduct violated [Mr. Waugh's] substantive due process rights." *Id.* at 207. The district court summarily adopted the magistrate judge's analysis and conclusion. *See id*. at 291.

### III. ANALYSIS OF ISSUES RAISED ON APPEAL

Deputy Dow raises the following issues on appeal: (1) whether this circuit's precedent adopting a "deliberate indifference" (as opposed to an "intent to harm") version of the "shock the conscience" standard for cases in which the defendant had time to deliberate before acting is contrary to *County of Sacramento v. Lewis*, 523 U.S. 833 (1998); (2) whether the conditions for use of the deliberate-indifference standard are present and, if so, whether his conduct satisfied it; (3) whether the magistrate judge properly invoked the state-created danger theory; (4) whether the conditions for use of the state-created danger theory are present; (5) whether Deputy

Dow was entitled to summary judgment on the state-created danger theory; and

(6) whether Deputy Dow should in any event have been granted qualified immunity

because the applicability of the state-created danger theory to his conduct was not

clearly established. We consider these issues in order below.

## A. Challenge to Validity of Deliberate-Indifference Version of Shock-the-Conscience Standard

Deputy Dow concedes that a line of Tenth Circuit precedent, relying on

language in *Lewis*, holds that a deliberate-indifference standard (rather than an

intent-to-harm standard) governs the inquiry into the defendant's state of mind for

purposes of applying the shock-the-conscience test in police pursuit cases when the

defendant had time for actual deliberation before engaging in the conduct alleged to

have violated the plaintiff's rights. *See* Aplt. Op. Br. at 20, 22.[4] Deputy Dow urges

us to disavow this precedent, which he contends misread *Lewis*, and adopt a

bright-line test requiring intent to harm in all police pursuit cases. But "absent

en banc consideration or an intervening Supreme Court decision that is contrary to or

invalidates our previous analysis," we must adhere to existing circuit precedent.

*United States v. Nichols*, 775 F.3d 1225, 1230 (10th Cir. 2014) (ellipses, brackets,

and internal quotation marks omitted). Deputy Dow may believe our case law is

---

[4]     Citing *Green v. Post*, 574 F.3d 1294 (10th Cir. 2009); *Graves v. Thomas*, 450 F.3d 1215 (10th Cir. 2006); *Perez v. Unified Gov't of Wyandotte County/Kansas City, Kan.*, 432 F.3d 1163 (10th Cir. 2005); *Radecki v. Barela*, 146 F.3d 1227 (10th Cir. 1998).

inconsistent with *Lewis*, but *Lewis* obviously does not constitute *intervening* precedent with respect to our cases that have followed it.

## B. Applicability of Deliberate-Indifference Standard

Deputy Dow contends that the deliberate-indifference standard should not, in any event, have been used here, because the evidence established that he had not had the requisite time for actual deliberation before seeking his brother's assistance. As noted earlier, the district court recognized that a fact dispute existed as to the precise amount of time involved, but concluded that there was, in any event, enough time for deliberation to warrant application of the deliberate-indifference standard.[5]

To the extent Deputy Dow challenges the district court's recognition of a genuine dispute of historical fact, we lack jurisdiction to review the matter absent a blatant contradiction with the record, which is not evident here. *See Lewis v. Tripp*, 604 F.3d 1221, 1225-26 (10th Cir. 2010). Deputy Dow's own evidence, on which he relies to argue that the time for deliberation was established as three minutes, is not so definite or conclusive as to blatantly contradict any other time period. His police report prepared a day after the incident, *see* App. at 164, notes receipt of a 2:00 pm dispatch informing him of the assault on the recovery agents at a convenience store

---

[5] Because the proper standard is a question of law, when there is a disputed choice between a deliberate-indifference and an intent-to-harm standard it would be error to simply assume the applicability of the deliberate-indifference standard—as a court should assume a disputed fact—in favor of the non-movant plaintiff. *See Perez*, 432 F.3d at 1165, 1168. Here the district court properly chose the applicable legal standard only after concluding that its factual predicate had been satisfied.

and Deputy Phillips' lone pursuit of the assailant.  It then recounts his subsequent arrival in the area, his contact with a witness who explained where Mr. Waugh had entered the nearby woods, and his assignment of Joshua to join the search.  The report then states that he received a call at 2:24 from Deputy Phillips, whom he told about Joshua assisting in the search.  Thus, the report shows that some appreciable time certainly elapsed before Deputy Dow sent Joshua into the woods, but it must have been less than 24 minutes.  Deputy Dow also attached an affidavit to his summary judgment motion that added a little detail about his activity following the 2:00 p.m. dispatch.  It stated that after receiving the dispatch, he and his brother "began driving through the back roads near the woods and [convenience store]." *Id.* at 120.  During this drive through the area, he saw the witness who flagged them down and told them where Mr. Waugh had entered the woods.  He then gave Joshua the gun and his badge and asked him to go into the woods after Mr. Waugh.

Considering the above evidence and all reasonable inferences therefrom in a light most favorable to Mr. Waugh, it would have been proper to conclude that Deputy Dow had enough time (albeit less than 24 minutes) for actual deliberation before sending his brother to look for Mr. Waugh.  After the magistrate judge so concluded, Deputy Dow submitted another affidavit, some three and a half years after the fact, stating that he "estimate[d] that from the time [he] received the call from dispatch to the time [he] dropped Josh off, a total of three (3) minutes had passed." *Id.* at 270.  This, he insists, indisputably established an elapsed time of three minutes,

which he contends was too short to permit actual deliberation. We disagree. Such a mere subjective "estimate" (offered long after the event by an obviously interested witness) is not definitive or conclusive evidence a jury would have to accept as establishing the fact estimated, particularly when there is evidence from which a different fact (a time greater than three but less than twenty-four minutes) could reasonably be found. Under the circumstances, the district court properly held that deliberation time remained a genuine issue of fact.[6]

In any event, even three minutes to consider arming his brother and asking him to join in the search for Mr. Waugh should have been sufficient to allow Deputy Dow to engage in actual deliberation under the circumstances. While there undoubtedly was a sense of urgency in getting to the scene to assist Deputy Phillips during this time, there is no evidence of other immediate demands on Deputy Dow's attention that would have prevented deliberate consideration of the decision to ask his brother to assist. That discrete and distinct decision is not comparable to the actions of an officer who engages in a high-speed pursuit of another vehicle—the paradigmatic

---

[6]    In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000), the Supreme Court held that a court ruling on summary judgment should disregard all evidence favorable to the moving party that the jury is not required to believe. It went on to explain that this did not bar evidence favoring the movant "that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Id.* While we need not and do not hold that Deputy Dow's self-serving estimate must be disregarded outright, we take guidance from *Reeves* in holding that this estimate, which a jury would not have been required to accept as establishing the actual time elapsed, does not establish the relevant time period as three minutes for purposes of summary judgment here.

example of the absence of actual deliberation—where constant, immediate, and changing demands on the officer's attention requiring instant judgment may excuse "even precipitate recklessness" and thus warrant an intent-to-harm standard. *Lewis*, 523 U.S. at 853. Similarly, if this case concerned a reflexive decision to speed to the scene (or an act of reckless driving on the way), the intent-to-harm standard could well apply, *see, e.g.*, *Perez*, 432 F.3d at 1164-65, 1168 (assessing fireman's decision to run red light in speeding to fire under *Lewis* standard). But again, the course of action adopted by Deputy Dow, after a short but sufficient time to consider it, is not of the same sort as these reactive actions. We agree with the district court that the appropriate standard here is deliberate indifference, not intent to harm.[7]

Deputy Dow argues in the alternative that, even if the deliberate-indifference standard is applicable, the district court erred in holding that his conduct was reckless or egregious enough to satisfy that standard. Because this argument goes to one of the elements of the state-created danger theory, we consider it with his challenges to other elements of that theory in section E below.

---

[7]    This court has noted that actual deliberation is "not necessarily defined with reference to minutes or seconds," but involves a "context-specific" consideration of the circumstances surrounding the decision in question. *Green*, 574 F.3d at 1301 n.8. Thus, for example, while maneuvers during a high-speed vehicle chase do not involve actual deliberation, an officer's calculated decision to pull his vehicle behind a suspect and turn on his lights (prompting a high-speed chase) does involve actual deliberation. *See Graves*, 450 F.3d at 1222. Deputy Dow's decision to have his brother assist in the search for Mr. Waugh involved comparable calculation and the time to engage in it.

## C. Magistrate Judge's Invocation of the State-Created Danger Theory

Deputy Dow insists the magistrate judge crossed the line separating proper liberal construction of Mr. Waugh's pro se pleadings from improper advocacy on Mr. Waugh's behalf by construing his complaint to include the state-created danger theory that has come to frame the analysis of this aspect of the case. We disagree. The facts Mr. Waugh alleged pointed to this theory, which falls within the due process rubric he generally invoked. We have previously explained that "if the court can reasonably read [pro se] pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority [and] his confusion of various legal theories." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The magistrate judge reasonably acknowledged the legal theory implicated by Mr. Waugh's pleadings,[8] and Deputy Dow was afforded ample opportunity, through objections to the report and recommendation, both to challenge this theory on the merits and to argue for qualified immunity in relation to it. We discern no reversible error in this respect.

---

[8]    Deputy Dow cites *Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009), in which we stated that a court should "not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Id.* at 1096 (internal quotation marks omitted). But here, in contrast, the magistrate judge simply clarified the legal theory under which the alleged facts and asserted constitutional right should be tested.

**D. Applicability of State-Created Danger Theory – Private Violence**

One of the conditions for applying the state-created danger theory is the exposure of the plaintiff to *private* violence. *See generally Gray*, 672 F.3d at 927-28 (discussing nature of and rationale for this condition). The magistrate judge found this condition satisfied by the fact that Joshua Dow was not a state actor. Deputy Dow objects that this determination is contradicted by the magistrate judge's (and district court's) separate ruling that, for purposes of Joshua Dow's potential liability under 42 U.S.C. § 1983, he could be found by the jury to qualify as a state actor through a theory of "joint action" with Deputy Dow, *see* App. at 218-21; *see also id.* at 292-93. There is no contradiction here, at least at this stage of the proceedings. Even if a finding of joint action for purposes of a private actor's liability under § 1983 would be controlling with respect to the distinct inquiry regarding private violence for purposes of a separate state-created danger claim—a point on which we express no opinion—all that has been held thus far is that a jury *could* find joint action. That ruling does not alter Joshua Dow's actual extant status as a private actor.

**E. Summary Judgment on State-Created Danger Claim**

A government officer asserting qualified immunity may take an interlocutory appeal from the denial of summary judgment, but he is limited to raising purely legal challenges to the ruling. *York v. City of Las Cruces*, 523 F.3d 1205, 1209 (10th Cir. 2008). Thus, we may consider the following two legal questions here: whether the

operative facts (i.e., the undisputed facts and facts the district court concluded a reasonable jury could find in favor of Mr. Waugh) suffice to show a violation of Mr. Waugh's rights under the state-created danger theory; and whether those rights were clearly established at the time of the alleged violation. *See Lewis v. Tripp*, 604 F.3d at 1225. We generally may not review the district court's conclusion that a reasonable jury could find particular facts in favor of the plaintiff. *Id.*[9]

As noted above, a state-created danger claim requires a showing that (1) the defendant created or increased a risk of danger to the plaintiff; (2) the risk was directed at the plaintiff in particular; (3) the risk was substantial and involved serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendant acted recklessly in conscious disregard of the risk; and (6) the defendant's conduct shocks the conscience. The last four elements overlap with the deliberate-indifference standard discussed earlier, which "encompasses conscious, deliberate indifference to an extreme risk of very serious harm to the plaintiff," where "extreme" means "egregious or outrageous to the extent that it shocks the judicial conscience." *Green*, 574 F.3d at 1303. Deputy Dow challenges all but the second element.

---

[9] "Facts," i.e., "the who, what, when, where, and why" of the events underlying a constitutional claim, *Lewis*, 604 F.3d at 1226, should be distinguished from the subsidiary elements of such a claim. Whether the historical facts can satisfy the elements of a state-created-danger claim is a question appropriate for our review on this qualified immunity appeal. *See, e.g.*, *Armijo ex rel. Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1264 (10th Cir. 1998).

Addressing the first, third, and fourth elements together, the magistrate judge stated:

> Deputy Dow's transport of Joshua Dow to [Mr. Waugh's] proximate location and provision to him of a loaded service pistol and official badge, coupled with instructions to locate [Mr. Waugh], are facts from which it may reasonably be inferred that Deputy Dow's conduct resulted in a risk of serious, immediate, and proximate harm to [Mr. Waugh]. . . . This risk may reasonably be inferred to have been obvious or known to Deputy Dow, and no reasonable allegation or evidence has been presented that would indicate otherwise.

App. at 199. In addressing the fifth element and holding that "a reasonable juror could conclude that Deputy Dow acted recklessly or intentionally to create a danger to [Mr. Waugh], with conscious disregard of the known and specific risk to [Mr. Waugh]," *id.* at 199-200, the magistrate judge noted additional facts relevant to the previous elements as well:

> Deputy Dow actively gave his badge and a pistol, which was loaded with ammunition, to a private actor and sent him into an area where a fugitive was loose, for the express purpose of locating the fugitive. . . . There is no argument or evidentiary material in the record indicating that Joshua Dow had any law enforcement training or experience, including for example knowledge of the proper procedure for apprehending a suspect or when force may be used. There is no argument or evidentiary material in the record indicating that Deputy Dow was asked or authorized, by any official at the Major County Sheriff's Office, to "deputize" his brother, gather a posse, or otherwise seek assistance from any other private citizen; rather, deputy Deputy Dow had no such authority.[10] There is no argument or evidentiary

---

[10]    The magistrate judge was correct that Deputy Dow had not been asked or authorized by the Sheriff to have Joshua assist in apprehending Mr. Waugh. But, as noted earlier, Deputy Dow did have statutory authority to ask for citizen assistance, although it is not clear this authority extends to arming citizens (and, again, he never claimed to have deputized Joshua). In any event, while this point is relevant to the

(continued)

- 16 -

material in the record indicating that Deputy Dow instructed Joshua Dow to avoid [Mr. Waugh] and only use the firearm if needed to protect himself;[11] rather the affidavit testimony permits a conclusion that the entire purpose of Deputy Dow's actions was for Joshua Dow to look for and assist in apprehending [Mr. Waugh].

*Id.* at 200-01 (citations omitted).

In addressing the sixth element and holding that Deputy Dow's conduct was egregious enough to be found conscience shocking, the magistrate judge began by summarizing the general circumstances recited above:

These facts permit a reasonable inference that Deputy Dow, without authorization and not pursuant to any sort of approved policy, armed a private citizen with a loaded gun and the insignia of law enforcement, and sent him into an area believed to contain a fugitive, with explicit direction to look for the fugitive, the result of which was a confrontation where the private citizen shot the fugitive.

*Id.* at 202. With the caveat explained in footnote 10 above, this summary is supported by the record. The magistrate judge then pointed out that Joshua Dow's involvement could easily have been avoided:

---

analysis, the dispositive issue here is not general abstract authority under state law but the circumstance-specific risk to which Mr. Waugh was exposed and Deputy Dow's reckless disregard of that risk in violation of federal constitutional law. As *Lewis* and many circuit decisions reflect, although police officers have authority to disregard traffic laws such as speed limits and traffic lights, that does not preclude or obviate a court's consideration of whether, in particular circumstances, such actions are so egregious as to trigger liability to injured persons under constitutional standards.

11      On appeal, Deputy Dow points to his affidavit wherein he averred that his purpose in arming Joshua was solely for Joshua's protection. But the critical point noted by the magistrate judge is the lack of evidence that Deputy Dow communicated this limitation on use of the gun to Joshua.

> [T]he two brothers did not unexpectedly and unavoidably find themselves in the path of a manhunt. Rather, after driving to the area where the search was being conducted, Deputy Dow dispatched Joshua Dow into the woods for the purpose of locating the suspect. There was opportunity to leave Joshua Dow at another location, have him stay in the vehicle where there was no possibility of him being mistaken for the fugitive [the stated reason Deputy Dow gave Joshua his badge], or have him take the vehicle and retreat to a safer location.

*Id.* (brackets, citation, and internal quotation marks omitted). The magistrate judge further noted a jury could find that the circumstances provided no justification for the extreme action of arming a private citizen and sending him after a fugitive:

> [T]he evidentiary material before the Court permits a reasonable inference that the circumstances were not so alarming as to warrant Deputy Dow's actions. The search for [Mr. Waugh] was already being undertaken by two trained law enforcement officers (Deputy Phillips and Deputy Dow), as well as two private fugitive recovery agents.[12] While exigent circumstances may in extreme instances warrant the involvement of a private citizen in a search for a fugitive, a reasonable jury could question whether such circumstances were present in this case.

*Id.* at 202-03.[13]

On the basis of the foregoing, the magistrate judge ultimately concluded that "the 'cumulative impression' of Deputy Dow's conduct could be found to have exhibited a blatant disregard for harm of a very great magnitude to [Mr. Waugh],

---

[12]     We note, however, that the evidence indicates Deputy Dow was not informed that the recovery agents had joined Deputy Phillips in pursuing Mr. Waugh into the woods after being assaulted at the convenience store.

[13]     In this same vein, the magistrate judge noted that Deputy Dow had time to contact dispatch to ask for more relevant information, such as whether Mr. Waugh was unarmed. *See* App. at 203-04.

which could be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 204-05 (internal quotation marks omitted). The district court agreed: "It is not a large leap of logic to find that arming a private citizen and sending him into a wooded area in search of a fugitive creates a[n] extreme risk of serious harm. The Court agrees that Deputy Dow's conduct was conscience shocking." *Id.* at 291.

Deputy Dow challenges this determination on all but the second element. As to the first, he argues that he did not create or increase any danger for Mr. Waugh, because he gave Joshua the gun only for self-protection. As already noted, however, the critical point is whether he told Joshua to restrict his use of the gun in this way and there is no evidence he did. He also argues that he did not expose Mr. Waugh to any increased danger, because Mr. Waugh was already being followed by the armed Deputy Phillips. But unlike Joshua, Deputy Phillips was a trained law enforcement officer who presumably would not shoot an unarmed suspect at the behest of a bounty hunter.

Deputy Dow challenges the third, fourth, and fifth elements through his argument that his conduct did not meet the deliberate-indifference standard discussed earlier. As for the requirement of a substantial risk of serious, immediate, and proximate harm, he points again to his averment that he gave Joshua the gun solely for Joshua's protection. We have just explained the problem with this argument. He also contends that he did not know Joshua would shoot Mr. Waugh and that there was no evidence indicating he was aware this might happen or intended for it to happen.

- 19 -

But a jury could reasonably find from the circumstances that the risk was obvious and that his conduct reflected a reckless disregard for that risk, which is all that must be shown.

As for the sixth element, requiring deliberate indifference that shocks the conscience, Deputy Dow emphasizes his statutory authority for seeking citizen assistance in the apprehension of fugitives, but it is not at all clear that such authority extends to giving the citizen in question a gun and a badge and sending him after a fugitive without clarification regarding the proper limited use of the gun. In any event, as we have explained, *see supra* note 10, the overarching determination here is one of federal constitutional law, under which an officer may be liable for creation of, and conscience-shocking deliberate indifference to, a substantial risk of serious harm to another—whether or not the general type of conduct the officer engaged in was authorized under state law. We agree with the district court that considering all of the circumstances, Deputy Dow's conduct demonstrated a recklessness that could be found to shock the conscience.

## F. Qualified Immunity – Clearly Established Law

The law governing the constitutional assessment of Deputy Dow's conduct, as to both the state-created danger theory and the deliberate-indifference standard for actions taken with time for actual deliberation, was clearly established at the time of the operative events—as evident from the precedent cited throughout this decision. While none of this precedent involved a citizen-assistance situation like that here,

"[a] previous decision need not be materially factually similar or identical to the present case; instead, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). And this circuit has noted that "the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Shroff v. Spellman*, 604 F.3d 1179, 1190 (10th Cir. 2010) (internal quotation marks omitted). Applying these standards to the record developed thus far, we agree with the district court that a reasonable officer in Deputy Dow's position would have understood that his conduct—involving the creation of, and a conscience-shocking deliberate indifference to, a substantial risk of serious and immediate harm to Mr. Waugh—violated Mr. Waugh's constitutional rights.

## IV.  CONCLUSION

For the reasons explained above, we affirm the district court's denial of summary judgment for Deputy Dow on the ground of qualified immunity as to Mr. Waugh's state-created danger claim. The district court, of course, "remains free to reconsider its qualified immunity question as the facts are developed and decided" in further proceedings, including trial, "[b]ut for now our obligation to view facts in the light most favorable to Mr. [Waugh] makes the entry of any final judgment [for

Deputy Dow] impossible." *Blackmon v. Sutton*, 734 F.3d 1237, 1243 (10th Cir.

2013).

The order of the district court is affirmed.

Entered for the Court

Mary Beck Briscoe
Chief Judge