**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 11, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHARLES BROWDER, in his individual
capacity and as Personal Representative of
the Estate of Ashley Browder; LINDSAY
BROWDER; DONNA BROWDER,

  Plaintiffs - Appellees,

v.

ADAM CASAUS, in his individual
capacity,

  Defendant - Appellant,

and

CITY OF ALBUQUERQUE,

  Defendant.

No. 16-2092
(D.C. No. 1:13-CV-00599-RB-KBM)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **MORITZ**, Circuit Judges.
_____

  Lindsay Browder, along with the estate of her sister, Ashley Browder, and

their parents, Charles and Donna Browder (collectively, the Browders), sued

_____

  [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument wouldn't materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment isn't binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. But it may be cited for its persuasive value. _See_ Fed. R. App. P. 32.1;
10th Cir. R. 32.1.

Albuquerque police officer Adam Casaus under 42 U.S.C. § 1983, alleging that Casaus violated their Fourteenth Amendment substantive due process rights by abusing his authority in an arbitrary manner that shocks the conscience. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). Specifically, they allege that Casaus, speeding after work in his police cruiser for his own personal pleasure, ran a red light and struck Ashley and Lindsay's car, killing Ashley and severely injuring Lindsay.

This court previously affirmed the district court's denial of Casaus's motion to dismiss based on qualified immunity, concluding that the allegations in the Browders' complaint were sufficient to establish that Casaus violated Ashley and Lindsay's clearly established constitutional rights. *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082-83 (10th Cir. 2015) (*Browder I*). On remand, Casaus moved for partial summary judgment, again asserting that he's entitled to qualified immunity. The district court denied Casaus's motion, and Casaus appeals.[1]

I.

"Because this is an interlocutory appeal from the denial of qualified immunity, 'we "take, as given, the facts that the district court assumed when it denied summary

---

[1] We ordinarily lack jurisdiction to review an order denying summary judgment. But because qualified immunity protects officials from the burdens of litigation, we have jurisdiction to review the denial of qualified immunity insofar as the appeal raises abstract issues of law, such as "whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right." *Attocknie v. Smith*, 798 F.3d 1252, 1256 (10th Cir. 2015) (quoting *Morris v. Noe*, 672 F.3d 1185, 1189 (10th Cir. 2012)), *cert. denied*, 136 S. Ct. 2008 (2016).

judgment."'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1191 (10th Cir. 2014) (quoting

*Morris*, 672 F.3d at 1189). We set forth those facts below.

Casaus finished his shift with the Albuquerque Police Department at 11:00

p.m. on the evening of February 9, 2013. He then visited his wife at her workplace.

Casaus left there in his police cruiser at 1:24 a.m. the following morning and, still

wearing his police uniform, headed west on Paseo Del Norte. Without any legitimate

law-enforcement objective, Casaus then turned on his vehicle's emergency lights. For

the next 8.8 miles, he averaged speeds of 66 mph while he drove through ten city

intersections. At the eleventh intersection, Paseo Del Norte and Eagle Ranch Road,

Casaus ran a red light and struck Lindsay and Ashley's car, which was traveling

north on Eagle Ranch. At 2.5 seconds before impact, when Casaus was driving 65

mph, he applied his brakes; at 2 seconds before impact, he accelerated. Casaus says

he looked both directions before entering the intersection and didn't see any cars on

Eagle Ranch. The collision killed 21-year-old Ashley and gravely injured 19-year-old

Lindsay.

Based on these facts,[2] the district court concluded that the Browders

established Casaus violated their clearly established due process rights. Accordingly,

---

[2] The district court noted that the parties disputed (1) whether Casaus had a legitimate law-enforcement objective and (2) whether the light was red or green when Casaus entered the intersection. But for purposes of its qualified-immunity analysis, the court resolved these disputes in the Browders' favor. Likewise, for purposes of this appeal, Casaus doesn't dispute the Browders' "version of these facts." Aplt. Br. 10.

the district court denied Casaus' motion for summary judgment based on qualified immunity.

II.

To overcome Casaus's claim of qualified immunity, the Browders must show that (1) Casaus violated their substantive due process rights and (2) those rights were clearly established at the time of the alleged violation. *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011). To establish a substantive due process violation, the Browders must show that Casaus's behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8.

The level of culpability required for action to shock the conscience largely depends on the context of the action. At the high end, such as in an emergency "high-speed automobile chase aimed at apprehending a suspected offender," "only a purpose to cause harm unrelated to the legitimate object of arrest" will suffice. *Id.* at 836. At the low end, negligent conduct "is categorically beneath the threshold of constitutional due process." *Id*. at 849. And in the middle lies culpability for "something more than negligence but 'less than intentional conduct, such as recklessness or "gross negligence."'" *Id*. (quoting *Daniels v. Williams*, 474 U.S. 327, 334 n.3 (1986)). "We have characterized this middle range standard as 'deliberate indifference' or 'calculated indifference.'" *Green v. Post*, 574 F.3d 1294, 1302 (10th Cir. 2009).

Within this middle range, we must make "an exact analysis" of "the circumstances that surround the conduct at issue and the governmental interest at

4

stake." *Id*. at 1301, 1302 (emphasis omitted) (first quoting *Lewis*, 523 U.S. at 850; then quoting *Radecki v. Barela*, 146 F.3d 1227, 1231 (10th Cir. 1998)). "Deliberate indifference that shocks [the conscience] in one environment may not be so patently egregious in another . . . ." *Id*. at 1301 (quoting *Lewis*, 523 U.S. at 850). Certain facts—e.g., whether the officer was acting in service of a legitimate governmental objective, and whether he had "time to make unhurried judgments" and "the chance for repeated reflection"—are particularly relevant to this determination. *Id*. at 1303, 1309 & n.15 (quoting *Perez v. Unified Gov't of Wyandotte Cty./Kansas City*, 432 F.3d 1163, 1166 (10th Cir. 2005)).

As we noted in *Browder I*, no one contends that Casaus acted with the specific intent to harm—the high end of culpability. 787 F.3d at 1081.[3] We further recognized that a jury might ultimately conclude that his actions in "[s]peeding and jumping red lights" amounted to nothing more than negligence, below the level of culpability. *Id*. But on the facts alleged in the complaint, applying the middle, deliberate-indifference standard, we held a jury might also conclude that speeding through city streets for almost 9 miles "through eleven city intersections and at least one red light—all for [Casaus's] personal pleasure, on no governmental business of any kind" showed a "conscious contempt of the lives of others" sufficient to shock the conscience and state a substantive due process claim. *Id*. at 1080, 1081.

---

[3] Casaus argues that even assuming he lacked any legitimate governmental objective for his conduct, that fact is only probative of whether he is culpable under the intent-to-harm standard, which the Browders didn't allege. But this fact is also relevant to whether he acted with the deliberate-indifference level of culpability. *See Green*, 574 F.3d at 1303, 1309 & n.15.

III.

Citing *Apodaca v. Rio Arriba County Sheriff's Department*, 905 F.2d 1445 (10th Cir. 1990), Casaus first argues that based on the facts found by the district court at the summary judgment stage, his conduct amounts to nothing more than a negligent violation of traffic laws. But Casaus's argument overlooks an obvious distinction between this case and *Apodaca,* where we held that the plaintiff's allegations—that a police officer struck a car while "driving too fast for the road and visibility conditions"—were grounded in negligence, and didn't state a substantive due process claim. *Id.* at 1446 n.3. In *Apodaca*, the speeding officer was responding to an emergency silent burglary alarm. *Id.* at 1446. Under the facts the district court assumed here, however, Casaus had no legitimate law enforcement objective for speeding through a red light.

Thus, unlike the officer in *Apodaca*, Casaus had the "luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing [law enforcement] obligations." *Green*, 574 F.3d at 1303 (quoting *Perez*, 432 F.3d at 1166); *see also Lewis*, 523 U.S. at 845-46 (distinguishing, for due process purposes, between governmental actions that are arbitrary and those that are instead reasonably justified by "a legitimate governmental objective"); *Green*, 574 F.3d at 1309 & n.15 (noting that officer "must balance" the "public interest served" by officer's actions against risk those actions pose to public). Accordingly, Casaus's reliance on *Apodaca* is misplaced.

For similar reasons, so too is his reliance on the Eighth Circuit's opinion in *Terrell v. Larson*, 396 F.3d 975 (8th Cir. 2005). Casaus characterizes *Terrell* as holding that officers who sped through an intersection on a red light in a non-emergency situation didn't engage in conscience-shocking behavior under the deliberate-indifference standard. But *Terrell* didn't hold that the officers were responding to a non-emergency situation; indeed, it was undisputed that the speeding officers in *Terrell* were responding to a domestic disturbance call reporting that a woman was threatening the life of a three-year-old girl. 396 F.3d at 977. Because the officers had volunteered as back-up, however, the plaintiffs argued that "the situation was not reasonably regarded as an emergency." *Id*. at 977, 980. Thus, the plaintiffs urged the court to apply the lower deliberate-indifference standard, rather than requiring proof of intent to harm. *Id.* at 979-80. The Eighth Circuit declined to do so, holding that the intent-to-harm standard applied as a matter of law because "it [was] undisputed that" the officers subjectively believed—whether reasonably or otherwise—that they were responding to an emergency within their assigned territory. *Id.* at 980.

As Casaus points out, the *Terrell* court alternatively held that the officers were entitled to qualified immunity "even under the deliberate indifference standard of fault." *Id.* at 980. But contrary to Casaus's assertions, the *Terrell* court didn't hold that "officer[s] who sped through an intersection on a red light in a *non-emergency situation* did not engage in consc[ience] shocking behavior even under the deliberate indifference standard." Aplt. Br. 19 (emphasis added). Instead, the *Terrell* court's

7

deliberate-indifference analysis was explicitly grounded in the assumption that the officers were "responding to [an] emergency within [their] assigned territory," 396 F.3d at 981—or, at the very least, that the officers believed they were responding to such an emergency, *id.* at 980.

The existence of an emergency in *Terrell*—whether real or merely perceived—distinguishes the facts in that case from those present here. As we've noted, whether an officer acts in service of a law enforcement objective is highly relevant to the substantive due process analysis. The Supreme Court, in describing what conduct might be conscience-shocking, carefully distinguished actions that are reasonably justified in the service of a "legitimate governmental objective" from "arbitrary" actions that lack such objective. *Lewis*, 523 U.S. at 846 (holding that substantive due process protects individuals against arbitrary exercise of governmental power "without any reasonable justification in the service of a legitimate governmental objective"). And in *Browder I*, this court explained that distinction's significance in this case, pointing out that if—as we assume here—Casaus was speeding for his own pleasure with no valid police or governmental purpose, his actions would be "the very model of [arbitrary]." 787 F.3d at 1080. Accordingly, we decline Casaus' invitation to "apply [*Terrell*'s] rationale to the present controversy." Aplt. Br. 19.

Casaus next argues that under the facts as the district court found them, he had insufficient time to deliberate about the risk he posed to Lindsay and Ashley specifically, as opposed to the motoring public in general. In support, he points out that in *Green*, this court described the relevant "middle level of culpability" as

8

"encompass[ing] conscious, deliberate indifference to an extreme risk of very serious harm to *the plaintiff.*" 574 F.3d at 1303 (emphasis added). Casaus suggests this court deliberately chose that phrase—"to the plaintiff"—in order to require proof of an extreme risk of harm to a specific plaintiff. He points out that *Green* cited language from the Eleventh Circuit describing the risk to "someone in Plaintiffs' position," *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1306 (11th Cir. 2003), and also cited a Sixth Circuit case describing the harm as being to "the plaintiff," *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 540 (6th Cir. 2008). According to Casaus, the Browders presented no evidence that he thought about or was aware of Lindsay and Ashley's car before the crash; nor could he have seen their car until he was a few feet from the intersection. Consequently, he reasons that he could not, as a matter of law, have been deliberately indifferent to any risk to Lindsay and Ashley.

But Casaus reads *Green* and the two cases it relied on, *Waddell* and *Hunt*, far too narrowly. Notably, none of those cases considered the specific argument raised here—i.e., whether a plaintiff must prove an officer was deliberately indifferent to the risk of injuring that specific plaintiff. Instead, in each case, the courts simply employed the language Casaus now objects to in providing a general definition of the term "deliberate indifference." No fair reading of *Green* would lead one to conclude that a plaintiff alleging a substantive due process violation must prove an officer acted with deliberate indifference specifically to that individual plaintiff.

9

Moreover, the law of this case indicates otherwise. In *Browder I*, we found the law clearly established that a police officer could be liable "for driving in a manner that exhibits 'a conscience-shocking deliberate indifference' *to the lives of those around him*." 787 F.3d at 1083 (emphasis added) (quoting *Green*, 574 F.3d at 1306). And *Browder I*'s general statement is entirely consistent with Supreme Court precedent, which has broadly characterized the risks posed by speeding police officers as encompassing "all those within stopping range, be they suspects, their passengers, other drivers, or bystanders." *Lewis*, 523 U.S. at 853. Accordingly, we agree with the district court that, in order to show Casaus violated their Fourteenth Amendment rights, the Browders had to show only that Casaus acted with deliberate indifference to the risk his conduct posed to the motoring public in general—not to Lindsay and Ashley specifically.

Alternatively, Casaus points out that *Lewis* teaches that the deliberate-indifference standard "is sensibly employed only when actual deliberation is practical." 523 U.S. at 851. And he argues the evidence here shows he didn't have time to actually deliberate before striking the Browders' car. But Casaus's argument presumes he could deliberate only in the few seconds immediately before he entered the Eagle Ranch intersection. We addressed and rejected this same argument in *Browder I*, explaining that "one could just as easily conclude that [Casaus] had more like eight minutes than 2.5 seconds to reflect on his actions—from the time he started driving at high speed on city surface streets through eleven intersections over 8.8 miles until the time of the crash." 787 F.3d at 1082.

10

Based on the facts as the district court found them, we reach the same conclusion here. As we've discussed, Casaus wasn't pursuing any car or criminal suspect or otherwise responding to an emergency. Thus, he had the "luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing [law enforcement] obligations." *Green*, 574 F.3d at 1303 (quoting *Perez*, 432 F.3d at 1166). Moreover, even "an officer's decision to pull his car behind a suspect and turn on his overhead lights is 'a product of actual deliberation . . . .'" *Id.* (quoting *Graves v. Thomas*, 450 F.3d 1215, 1222 (10th Cir. 2006)). Under these circumstances, we conclude the district court didn't err in refusing to limit the relevant time period for determining whether Casaus had time to deliberate to the few seconds before the crash.

Finally, Casaus attempts to resurrect his *Browder I* argument that, at the time of the accident, it wasn't clearly established that the commission of a traffic infraction by an officer in a police car could amount to a constitutional violation. But in *Browder I*, we held it was clearly established that Casaus's alleged conduct— speeding and running a red light for no law enforcement reason—could give rise to a substantive due process claim. 787 F.3d at 1083.

Unwilling to let this argument go, Casaus points out that *Browder I* relied for this proposition on *Lewis*, where the Supreme Court "expressly noted when a private person suffers a serious physical injury 'due to a police officer's *intentional misuse* of his vehicle' a viable due process claim can arise." *Id.* (quoting *Lewis*, 523 U.S. at 854 n.13). Casaus suggests the term "misuse" isn't defined and could include

11

negligent conduct. Consequently, Casaus reasons, a reasonable officer couldn't be expected to know what type of misuse of a police vehicle could give rise to a constitutional claim.

While this argument suffers from numerous flaws[4], we need not expansively consider them. The bottom line is that we've already held that extant authority "was more than enough to make clear to any reasonable officer in 2013 (the time of the accident) that the conduct alleged here could give rise to a claim under the Fourteenth Amendment." *Id*. That holding is both the law of the case and binding circuit precedent.

Accordingly, we affirm the district court's denial of Casaus's motion for partial summary judgment. We also grant Casaus's motion for leave to file a portion of the Appendix under seal.

Entered for the Court

Nancy L. Moritz
Circuit Judge

---

[4] One obvious flaw in Casaus's argument is his refusal to recognize that both *Lewis* and *Browder I* referred to the "intentional" misuse of a police vehicle, thus ruling out the possibility that negligent misuse would suffice. *Id*. (quoting *Lewis*, 523 U.S. at 854 n.13). Casaus also fails to recognize that, in addition to the statement in *Lewis*, *Browder I* relied on our own circuit precedent "warn[ing] that an officer who kills a person while speeding at 60 miles an hour on surface streets absent any emergency and in violation of state law invites a Fourteenth Amendment claim." *Id*. (citing *Williams v. City and Cty. of Denver*, 99 F.3d 1009 (10th Cir. 1996), *vacated and remanded* in light of *Lewis*, 140 F.3d 855 (10th Cir. 1997)).